UNITED STATES, Appellee

v.

BAY L. HOWARD, Private E–2, U. S. Army, Appellant

2 USCMA 519, 10 CMR 17

No. 1096

Decided May 15, 1953

Lт Coʟ Herman P. Goebel, Jr., U. S. Army, Lт Coʟ George M. Thorpe, U. S. Army, and Maj Richard H. Love, U. S. Army, for Appellant.

Lт Coʟ Thayer Chapman, U. S. Army, and 1sт Lт Eugene L. Grimm, U. S. Army, for Appellee.

PAUL W. BROSMAN, Judge:

The accused, Howard, was convicted by general court-martial sitting at Augsburg, Germany, of three breaches of restriction and of possession of a false pass with intent to deceive, all violations of Article 134, Uniform Code of Military Justice, 50 USC § 728. On affirmance by intermediate reviewing authorities, this Court granted accused's petition for review, limited, however, to the following questions: (1) whether the evidence was sufficient to sustain the convictions, and (2) whether the instructions by the law officer to the court-martial were adequate.

II

It appears that on December 18, 1951, accused was convicted by special court-martial of an offense—not involved here—and sentenced to restriction for four months. On the same day, accused's commanding officer, a Captain Dodson, purported to explain the restriction and its limits to him, and informed him that it was effective immediately. In point of fact, the special court-martial conviction and sentence were not approved and ordered executed by the convening authority until January 4, 1952. This latter officer, it should also be observed, reduced the period of restriction to two months. Specifications 1, 2, and 3, involved here, alleged breaches, on December 25, 1951, and January 1 and January 2, 1952, respectively, of the restriction imposed by Captain Dodson. Defense concedes that accused exceeded the limits of the restriction on the dates alleged, but argues that the restriction was wholly illegal, and could not provide a basis in law for the charge and specifications here considered.

It is apparent from the record that Captain Dodson, in imposing the restriction, was acting on the misunderstanding that he was executing the sentence imposed by the special court-martial. This, of course, he was without power to do since the sentence could be ordered into execution only by the convening authority, after approval of the findings and sentence. Uniform Code, Article 71(d), 50 USC § 658(d); Manual for Courts-Martial, United States, 1951, paragraphs 86a, 98. However, this does not necessarily mean that the restriction was illegal—provided the Captain had access to a source of authority to order restriction apart from the court-martial sentence. This is true for the reason that action under a misapprehension as to the precise legal basis therefor is nonetheless valid, if a proper foundation for the power in fact exists. See Helvering v. Gowran, 302 US 238, 245, 82 L ed 224, 229, 58 S Ct 154; J. E. Riley Co. v. Commissioner, 311 US 55, 59, 85 L ed 36, 39, 61 S Ct 95; Walling v. Friend, 156 F2d 429, 431. There is no question that Captain Dodson had not only the power, but the duty, to consider restriction of the accused pending receipt of notice of the convening authority's action—for paragraph 21d of the Manual, supra, specifically provides that:

"Upon notification from a trial counsel of the result of a trial (44e (2)), a commanding officer will take prompt and appropriate action with respect to the restraint of the person tried. Such action, depending on the circumstances, may involve the immediate release of the person from any restraint, or the imposition of any necessary restraint pending final action on the case."

It is apparent, therefore, that, in the exercise of his sound discretion, Captain Dodson, as the accused's commanding officer, lawfully could have ordered him into restriction. He did so in fact, and we have no basis whatever for a conclusion that his determination of the necessity of restriction was unjustified. It has been argued additionally that basic considerations of military discipline operate to preclude the accused from challenging the Captain's exercise of discretion in the manner the former chose to use. Regardless of whether this is true, it is certain that appellant assumed the risk of error in judgment in determining his course of conduct in the premises. We are un-

willing to characterize Captain Dodson's action as illegal.

### III

In view of our disposition of the foregoing question, the issue of sufficiency of the evidence presents no real problem. Suffice it to say that, after full consideration, we have concluded that the record of trial contains ample evidence to sustain all findings of guilty.

### IV

With respect to the elements of the offenses charged, the law officer, in his instructions to the members of the court merely said:

"The court is advised that the elements of the offense are as follows: That the accused did or fail [sic] to do the acts as alleged, and b, the circumstances as specified. . . ."

Manifestly this instruction falls far short of providing a legally sufficient framework to guide the members of the court in their deliberations as to the guilt or innocence of the accused. United States v. Welch (No. 196), 3 CMR 136, decided May 27, 1952; see also United States v. Gilbertson (No. 318), 4 CMR 57, decided July 22, 1952. It is true that we observed in United States v. Rhoden (No. 153), 2 CMR 99, decided February 26, 1952, that reference in the instructions as to the specifications, via the phrase "as alleged", may· perhaps adequately serve to satisfy minor instructional failings. However, use of the conventional legal tag here certainly could not and did not operate to cure the gross deficiencies in the instructions in this case. See United States v. Williams (No. 133), 2 CMR 92, decided February 21, 1952. It is settled that the right of an accused to have the triers of facts instructed fairly, accurately and in full detail is one of the rights secured to him through the concept of military due process of law. United States v. Clay, (No. 49), 1 CMR 74, decided November 27, 1951; United States v Keith, (No. 226), 4 CMR 34, decided July 3, 1952. It follows that reversal of these convictions is required.

The decision of the board of review is reversed and a rehearing ordered.

Chief Judge QUINN concurs.

Judge LATIMER concurs in the result.