UNITED STATES, Appellee

v.

EUGENE THOMAS LARNEY, Seaman Apprentice, U. S. Navy, Appellant

2 USCMA 563, 10 CMR 61

No. 775

Decided May 29, 1953

LCᴅʀ John P. Marlais, USNR, Lᴛᴊɢ Robert Emmet Dunne, USNR, and Cᴀᴘᴛ P. H. Williams, USMCR, for Appellant.
Cᴀᴘᴛ Francis C. Foley, Jr., USMCR, for Appellee.

## Opinion of the Court

Gᴇᴏʀɢᴇ W. Lᴀᴛɪᴍᴇʀ, Judge:

This case is before the Court on certificate from The Judge Advocate General, United States Navy, pursuant to Article 67(b)(2), Uniform Code of Military Justice, 50 USC § 654. The facts and circumstances which gave rise to the controversy follow.

Accused absented himself without leave from the U.S.S. Cʜᴀʀʟᴇꜱ H. Rᴏᴀɴ, from February 22 to March 4, 1952. Shortly thereafter he returned to naval control and was ordered by the commanding officer of the United States Naval Receiving Station, Brooklyn, New York, to report to the United States Naval Training Station at Newport, Rhode Island, on March 11, 1952. He failed to report at the latter place until March 15, 1952. As a result of these actions accused was tried by special court-martial on the following charges:

"Charge I. Violation of the Uniform Code of Military Justice, Article 86.

"Specification 1: In that Eugene Thomas Larney, seaman apprentice, U. S. Navy, U. S. Naval Receiving Station, Brooklyn, New York, did, on or about 0600 hours, 22 February 1952, without proper authority, absent himself from his unit, to wit: U.S.S. Charles H. Roan (DD–853), and did remain so absent until on or about 2340 hours, 4 March 1952.

"Specification 2: In that Eugene Thomas Larney, . . . did, on or about 1200 hours, 11 March 1952, without proper authority, absent himself from his unit, to wit: U. S. Naval Training Station, Newport, Rhode Island, and did remain so absent until on or about 0115 hours, 15 March 1952.

"Charge II: Violation of the Uniform Code of Military Justice, Article 92.

"Specification: In that Eugene Thomas Larney, . . . , having knowledge of a lawful order issued by the Commanding Officer, U. S. Naval Receiving Station, Brooklyn, New York, ordering him, the said Larney, to report to the U. S. Naval Training Station, Newport, Rhode Island, for further transfer, on or about 1200 hours, 11 March 1952, an order which it was his duty to obey, did, at Newport, Rhode Island, on or about 1200 hours, 11 March 1952, fail to obey the same."

Accused pleaded guilty to all charges and specifications, was found guilty by plea, and he was sentenced to be confined at hard labor for six months, to forfeit $50.00 per month for the same period, and to receive a bad-conduct discharge. The convening authority approved the bad-conduct discharge but reduced the confinement and forfeitures of pay to a five-month period. The officer exercising general court-martial authority concurred. The board of review affirmed the findings and the bad-conduct discharge, but further reduced the period of confinement and loss of pay to three months because the record of a previous conviction had been improperly considered by the court.

In his certificate The Judge Advocate General has requested that this Court determine (1) whether the accused may be legally convicted on his plea of guilty to two specifications alleging absence without leave and failure to obey a lawful order when the two arise out of the same transaction, and (2) whether the sentence imposed is legal. As part of the second certified issue, appellate Government counsel seek a ruling as to whether the board of review erred in reducing the sentence because it concluded the record of a previous conviction should not have been considered by the court-martial.

Prior to the promulgation of the Manual for Courts-Martial, United States, 1951, the principles ██ applied to multiple offenses, ██ arising out of the same act or transaction, varied among the services. To resolve the conflict the framers of the Manual attempted to follow the rule enunciated by the Federal courts. See Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, pages 77 and 78. The present Manual rule is found in paragraph 74b(4), page 116, Manual for Courts-Martial, supra, which provides as follows:

"*Offenses arising out of the same act or transaction.*—The accused may be found guilty of two or more offenses arising out of the same act or transaction, without regard to whether the offenses are separate. In this connection, however, see 76a (8)."

We might answer the first certified question by simply calling attention to this paragraph but in the military judicial system a sentence is not imposed on each specification. If courts-martial do not use some discrimination in testing findings for similarity of offenses, appellate tribunals will be processing many cases to correct improper sentences. It would seem to be better practice to have the law officer determine the separability before sentence so the court-martial could be informed as to whether the sentence should be assessed on one offense or on several offenses. The same test may be applied in both instances so we will apply it first to the findings.

In Blockburger v. United States, 284 US 299, 76 L ed 306, 52 S Ct 180 the United States Supreme Court in 1932 announced the principles controlling in the Federal civilian system. There the defendant had been convicted on three counts of an indictment. One alleged the sale of drugs on a specified day; another alleged a sale of drugs on the following day, the drug not being in or from the original stamped package; and the third count charged that the same sale was made without a written order from the purchaser as required by law. The court sentenced the petitioner to

five years imprisonment and $2,000 fine on each count, the terms of confinement to run consecutively. Mr. Justice Sutherland, speaking for the Court, stated:

"Section 1 of the Narcotic Act creates the offense of selling any of the forbidden drugs except in or from the original stamped package; and section 2 creates the offense of selling any of such drugs not in pursuance of a written order of the person to whom the drug is sold. Thus, upon the face of the statute, two distinct offenses are created. Here there was but one sale, and the question is whether, both sections being violated by the same act, the accused committed two offenses or only one.

. . . . . . .

"Each of the offenses created requires proof of a different element. *The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.* Gavieres v. United States, 220 US 338, 342, and authorities cited. In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in Morey v. Com., 108 Mass. 433: 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.' Compare Albrecht v. United States, 273 US 1, 11, 12, and cases there cited. Applying the test, we must conclude that here, although both sections were violated by the one sale, two offenses were committed." [Emphasis supplied].

In Bracey v. Zerbst, 93 F2d 9 (CA 10th Cir), the defendant had previously pleaded guilty to five counts charging felonious assaults with dangerous weapons, all arising out of the same transaction. Each count charged an assault with a separate weapon, the first with

566

a metal pitcher, the second with a bottle opener, the third with a bottle, the fourth with another bottle, and the fifth with a hard blunt instrument. Defendant was sentenced on all five counts and the sentences on four counts were to run consecutively. The sentence on the fifth count was to run concurrently with the sentence imposed on the first. After serving a portion of his time, the defendant filed an application for a writ of habeas corpus contending that the indictment charged but one offense and that the trial court was without jurisdiction to impose a sentence on more than one count. In denying that petition, the court stated:

"The test for determining whether the offenses charged in the several counts of an indictment are identical is whether the facts alleged in one, if offered in support of the others, would sustain a conviction. Curtis v. United States (CCA 10) 67 F2d 943, 947; Morgan v. Devine, 237 US 632, 639, 35 S Ct 712, 59 L ed 1153; Ebeling v. Morgan, 237 US 625, 630, 631, 35 S Ct 710, 59 L ed 1151.

"Where each count requires proof of a fact which the others do not, the several offenses charged are not identical. Casebeer v. United States (CCA 10) 87 F2d 668, 669; Schultz v. Zerbst (CCA 10) 73 F2d 668, 669; Blockburger v. United States, 284 US 299, 304, 52 S Ct 180, 182, 76 L ed 306; Gavieres v. United States, 220 US 338, 342, 31 S Ct 421, 55 L ed 489.

"It is plain that each of counts one, two, three and four charged an assault with a separate and distinct weapon, and each therefore required proof of a fact which the others did not. It follows that they charged separate and distinct offenses."

The Manual for Courts-Martial, United States, 1951, in paragraph 76a (8), supra, adopts the principles announced in the foregoing authorities. Therefore, if the two offenses herein involved are not identical in that each requires proof of a material fact that the other does not, there can be no question but that the court-martial returned findings on separate offenses. In view of the fact that accused entered a plea of guilty, we are handicapped in determining the detailed facts involved. However, a plea of guilty admits all facts well pleaded and so we turn to the specifications to search out the factual similarities or differences in the offenses established. The specification on absence without leave alleges the accused, without authority, absented himself from his unit, i.e., Naval Training Station, Newport, Rhode Island, from March 11, 1952, until March 15, 1952. The specification on failure to obey alleges that the accused having knowledge of a lawful order to report to the United States Naval Training Station, Newport, Rhode Island, on or about noon, March 11, 1952, failed to obey the same. The two specifications allege offenses under separate punitive articles; so, assuming they arose out of one transaction, we will test their separability by the announced rule. The first specification required, and there was proof of the facts, that the accused was absent without leave, at the time and place alleged, but in order to prove the offense it was not necessary to prove a failure to obey the order set forth in the other specification for the accused could have obeyed the order and then gone absent without authority. On the other hand, the second specification required and there was proof, by plea, that an order was issued. Accused was familiar with it, he had a duty to obey and he failed to obey. To establish that offense it was not necessary to prove absence without authority as the accused could have failed to obey the order without leaving the Brooklyn Receiving Station. It matters little in this case whether the rule be considered in the abstract or measured by the facts judicially admitted. In either event, each offense required the proof of a fact which the other did not. The first question certified by The Judge Advocate General of the Navy, must, therefore, be answered in the affirmative.

The general principles announced above control our holding on the second certified question. Paragraph 76a (8)

of the Manual for Courts-Martial, United States, 1951, provides as follows:

"The maximum authorized punishment may be imposed for each of two or more separate offenses arising out of the same act or transaction. The test to be applied in determining whether the offenses of which the accused has been convicted are separate is this: The offenses are separate if each offense requires proof of an element not required to prove the other. . . ."

This provision states the rule substantially as we have quoted it from the civilian authorities and ■■■■■■■ applied it to measure the findings. It must, however, be remembered that an accused cannot be twice sentenced for the same offense regardless of the rule governing findings. We find, however, that the Federal courts use the identical rule to test sentences and they have repeatedly affirmed sentences on different counts if they were within the rule. If that can be sustained by the civilian courts without offending against constitutional guarantees, it necessarily follows that there is no violation of the Uniform Code as Article 44, 50 USC § 619, dealing with double jeopardy does not enlarge the constitutional right or privilege. Accordingly, we held that so long as there are separate offenses charged and found, regardless of the fact that they may arise out of the same transaction, sentence may be imposed for each offense.

There is one further matter regarding the legality of the sentence which requires consideration. ■■■■■■■ The accused was convicted of two offenses of absence without leave which involved a total absence of sixteen days. Under the Table of Maximum Punishments, Paragraph 127c, Manual for Courts-Martial, United States, 1951, the punishment authorized for these offenses is three days' confinement for each day of absence, or a total of forty-eight days. For the offense of failing to obey a lawful order under Article 92, 50 USC

§ 686, the maximum punishment authorized is a bad-conduct discharge, confinement and total forfeiture of pay for six months. However, it is contended by accused that the maximum placed upon the latter offense is further restricted by Footnote 5 because the failure to obey involves absence without leave and the punishment for that offense is specifically listed in the Table. The Footnote states:

"The punishment for this offense does not apply in those cases wherein the accused is found guilty of an offense which, although involving a failure to obey a lawful order, is specifically listed elsewhere in this table."

A similar assertion was answered by us in United States v. Buckmiller (No. 492), 4 CMR 96, decided July 31, 1952. While the factual situations differ slightly, the principles controlling that case require that we overrule the contention here advanced. In that case the accused failed to obey a verbal order of an acting first sergeant ordering him to report to the Battalion Ration Breakdown Section for duty. Here the accused failed to obey an order of the Commanding Officer, United States Naval Receiving Station, ordering him to report to the United States Naval Training Station. In both instances the accused was found guilty of an offense more serious than the one which accused claims controls the maximum punishment imposable. The opinion of the Court in the Buckmiller case, supra, holds that the test to be used in determining whether Footnote 5 applies is to compare the gravamen of the offense set out in the specification with the charge it is laid under and other articles under which it might have been laid. Further, that the controlling element to be looked for in determining the punishment to be assessed is whether the failure to obey a direct personal order of a superior to perform some duty rather than failure to perform some duty ordinarily considered routine. If there is found to be a failure which indicates disrespect for authority by the flaunting of a direct order of a superior, the footnote is inapplicable and the greater punishment

**568**

may be imposed. In the concurring opinion in that case, the test used was whether or not it fairly appeared that the order which was disobeyed was given for the purpose of increasing the severity of the punishment. If it was, the provisions of Footnote 5 applied. If not, then the Footnote had no application. Regardless of which concept is applied in this instance, it is obvious that the severity of the punishment is not controlled by the Footnote. Here there was a disobedience of a direct, personal and written order given by a superior officer which was not given for the purpose of increasing punishment. The second certified question is answered in the affirmative and we hold the sentence is legal.

Government counsel request that we reverse the board of review's action in reducing the sentence ▪ because it concluded a previous conviction of the accused was erroneously considered by the court-martial when it imposed punishment. The alleged infirmity in the exhibit showing the previous conviction is that it failed to furnish evidence that final appellate processes had been completed. The exhibit is a certified copy of that portion of accused's service record which contains entries concerning court-martial data. It shows that accused was tried on July 26, 1951; that he was found guilty on four separate specifications and was sentenced to be discharged from the service with a bad-conduct discharge, to be confined at hard labor for six months and to forfeit $50.00 per month for the same period; that the convening authority on August 9, 1951, approved the sentence, except he suspended the execution of the bad-conduct discharge for six months and reduced the period of confinement and forfeitures of pay to four months; that on August 30, 1951, the supervisory authority approved the findings and sentence as modified; and, that the order promulgating the result of trial was published on the same date.

Government counsel rely on the ruling of this Court in United States v. Tiedemann (No. 615), 5 CMR 23, decided August 15, 1952. In theory, that case is hardly distinguishable from the one now before us. The difference, if any, arises from one additional appellate step brought about because here the sentence imposed on the previous offense included a bad-conduct discharge. While there were two previous offenses in the cited case and one was committed before the effective date of the Code, the other was subsequent to the date of its passage and was controlled by its provisions. We can by-pass the first for the reason that the procedure determining its finality was controlled by provisions of Naval Courts and Boards, 1937, and not by the present act. As to the second offense discussed in that case, because it did not involve a bad-conduct discharge, the convening authority was authorized to issue the order promulgating the result of trial and appellate review could end with the supervisory authority. In this particular instance, the supervisory authority could issue the order publishing the result of trial on the former conviction but appellate review could not be completed until affirmed by a board of review or by this Court.

Because of the facts and circumstances in the Tiedemann case, we there held that the order publishing the result of trial constituted prima facie evidence of finality and not being rebutted by accused, it was sufficient to establish a final judgment even though the acts required of the supervisory authority did not show on the face of the record as having been performed. In the instant case, the data or the order publishing results of trial is shown and the respective actions of the convening authority and the supervisory authority are disclosed by the exhibit. However, it does not affirmatively appear whether appellate procedure was completed as the sentence involved a bad-conduct discharge and appellate steps subsequent to disposition by the supervisory authority are not shown.

Government counsel concede the record does not affirmatively disclose completion of appellate review, but contend in line with the doctrine of the Tiedemann case, that if the accused desires to contest the finality of the former judgment of conviction, the

burden is placed on him to rebut the prima facie showing made when an order promulgating the result of trial or a service record entry of conviction is in evidence. We concur with that contention. The issue involves post finding procedure and concerns a matter as to who carries the burden of proof. Paragraph 75b(2), page 120, of the Manual for Courts-Martial, United States, 1951, provides: "Unless the accused has been tried for an offense within the meaning of Article 44b, Uniform Code of Military Justice, evidence as to the offense is not admissible as evidence of a previous conviction." Article 44b provides in substance that a proceeding in which accused has been found guilty shall not be held to be a trial until review of the case has been fully completed. However, the quoted provision above and the Article must be construed in the light of other provisions of paragraphs 75b and 68d of the Manual, supra. In substance they both permit previous offenses to be proven by the order promulgating the results of trial or by extract copies from the service record. The order of publication referred to in the Manual is the initial order as the phrase has long been used to identify that particular order and subsequently issued orders are otherwise designated. Therefore, if we are to give force and effect to all of the provisions bearing on this issue, then it necessarily follows that when an order publishing the result of trial or a service record entry showing conviction and the promulgation of the result of trial is admitted in evidence a prima facie showing of a former conviction has been established. The showing may be overcome by other evidence in the record or it may be rebutted by the accused, but unless there is evidence in the record from which it can be determined that subsequent steps required by the particular findings and sentence have not been completed, the conviction may be used as a basis for increasing the severity of the sentence. In this case the prima facie showing remains unassailed and the conviction could have been used. The ruling of the board of review on this issue was incorrect.

The record is returned to The Judge

Advocate General of the Navy with directions to refer the same to the board of review for action not inconsistent with this opinion.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring):

I fully concur in the majority opinion save as divergent views may be stated hereafter, either expressly or impliedly.

I

Of course, I agree that there was no error in the multiple findings of guilty returned against this accused. To do this I need go no further than I am carried by the literal phrasing of paragraph 74b(4), Manual for Courts-Martial, United States, 1951, which provides specifically that:

"The accused may be found guilty of two or more offenses arising out of the same act or transaction, *without regard to whether the offenses are separate.* . . ." [Emphasis supplied].

I perceive no sound reason for testing the validity of the *findings* returned in this case to determine whether they relate to *separate* offenses—and affirming them because they do. It appears to me that the majority opinion does just that. Certainly the Manual provision set out above would not permit their reversal because they do not! Compelling considerations may indeed exist which argue that there is reason to demand in military law that offenses be separate to sustain findings as well as the sentence—and the majority has appropriately suggested the nature of some of them. However, the Code, the Manual and the Federal decisional law are jointly opposed to this view, and I am quite without disposition to engraft such a requirement on military justice procedure through a process of judicial legislation.

To keep the record straight, two further observations should be made at this juncture. The majority has suggested that "in the military judicial system a sentence is not imposed on each specification." I am sure that its members mean merely to say that a

*separate* and *readily discernible* sentence is not so adjudged. Certainly within the totality of the unitary sentence used in court-martial procedure are included segments assignable to each offense of which the accused was found guilty. I agree most warmly that "It would seem to be better practice to have the law officer determine the separability before sentence so the court-martial could be informed as to whether the sentence should be assessed on one offense or on several offenses." Indeed, I would go further—even to the length of asserting that he cannot possibly perform his function responsibly unless he does so. Happily—and despite the Manual's uncertain language on the subject—the practice of instructing on the maximum sentence in this and other situations is in widespread use, although this Court has not yet been afforded an opportunity to consider definitively the question of his legal duty in this regard.

## II

I agree, too, that the offenses involved here are separate. Applying literally and strictly the Manual definition contained in paragraph 76a(8), that offenses are separate "if each . . . requires proof of an element not required to prove the other," the conclusion follows easily that violation of an order is not required to prove absence without leave, and absence without leave is not necessary to prove violation of a lawful order. Ergo, the offenses are separate. However, I am afraid the problem is just not that simple, and it cannot be solved properly by such an in vacuo approach. We have demonstrated earlier that the test of paragraph 76a(8), although generally workable, cannot be applied in all cases. United States v. Joe L. Davis (No. 646), 10 CMR 3, decided May 14, 1953. This case presents a further situation which warrants deeper inspection and a more careful consideration than that provided by a superficial and generalized application of the Manual definition.

Followed logically, such a literal and strick approach would mean that every military person who absents himself from his place of duty without authority may be convicted of and sentenced for two offenses: (1) absence without leave, and (2) a violation of an order, regulation, or other directive requiring of military personnel authority for absence from station. This is true for the reason that, viewed abstractly, it is not necessary to prove a violation of an order or the like to sustain a conviction for absence without leave, and certainly proof of absence is not a prerequisite to conviction for the violation of a regulation or order. All familiar with military law would—I believe—shrink from this proposition aghast. And why? Because the absence and the order requiring authority therefor relate to the same duty! By absenting himself without authority, the accused in this hypothetical situation breached the duty imposed by the order or other directive requiring authority—and the latter was the *only* source of that duty.

Perhaps my point would be made with more effect if put in a somewhat different fashion. The offense commonly known as "absence without leave" is actually but a specific instance of the violation of a particular kind of directive, an order requiring authority for absences. Behind every conviction of absence without leave is the violation of an order, although the order, regulation, or the like, of course, is rarely required as the object of proof. But where the duty to be present arises only from a specific order, the latter is a necessary element to prove an absence in violation of its terms. So, viewed in this light, even within the Manual definition, one could not be *sentenced* separately both for the absence and for a violation of the order.

Turning to the facts and the specification in this case, we find that the accused was ordered to report to Newport, Rhode Island, on March 11, 1952, but that he did not report until March 15. He was charged with a violation of the order to report to Newport on March 11, and with absenting himself without leave for the subsequent period of delay in reporting. The question then —accepting the analysis previously set out—is whether the duty to be at New-

port from March 11–15 was derived solely from the order directing him to that station. If so, he could not lawfully be sentenced for having committed the two offenses involved here. If not, a contrary result is required. I believe that the latter represents the proper conclusion—for conceptually two steps are involved, each related to and arising out of a separate duty. First, the accused was required to present himself at Newport in accordance with the order to that effect given to him at the Receiving Station in Brooklyn. Second, he was required by a different general order, regulation, or other directive—although this does not explicitly appear in the record—to remain at Newport until ordered elsewhere, and to remain within the limits of that station, save as he might be granted permission to absent himself. Therefore, in failing to report to Newport on the date specified, accused breached two separate duties and committed two separate offenses within the meaning of paragraph 76a (8) of the Manual, supra. I suggest—and genuinely believe—that this notion of identification of duty is the living principle behind the bare bones of the Manual and Federal civilian tests for the determination of separateness—and that it constitutes the reagent through which apparent contradictions in the area may be reconciled.

III

I observe in the principal opinion what I am afraid is a potentially serious confusion in its implication that the terms "element" and "fact" may be used interchangeably in the solution of problems like the one under scrutiny here. This arises, of course, in connection with the discussion of the Blockburger and Bracey cases, together with the language of paragraph 76a(8) of the Manual. The latter, of course, talks in terms of *elements*, while the two cases speak of *facts*. While this possible confusion—and there may in reality be none in the minds of the majority—does not at all require that I dissent from the result reached in the instant case, if it exists, it might conceivably compel this action in some future one. Just now, therefore, I am interested only in entering a caveat. Unless we know fully what we mean and exactly what we are doing, the words should not be used interchangeably in this setting in my view. Certainly the term "element" should not be used in a generalized or in vacuo sense, but must always be related to the facts of the individual case. Disregard of this, I believe, can only lead to error.