UNITED STATES, Appellee

v

JIMMY C. MODESETT, Boilerman Third Class,
U. S. Navy, Appellant

9 USCMA 152, 25 CMR 414

No. 10,826

Decided April 11, 1958

Commander *John P. Gibbons* argued the cause for Appellant, Accused.
Commander *Louis L. Milano* argued the cause for Appellee, United States. With him on the brief was Commander *Craig McKee*.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge.

The accused pleaded guilty to two charges alleging violations of the Uniform Code of Military Justice. The question before us is whether he can be punished on the basis of both charges or only on the basis of one which carries the greater punishment.

Charge I alleges that the accused absented himself without authority from his unit, U.S.S. AJAX (AR–6), from 6:10 a.m., July 3, 1957, until apprehended at 1:45 p.m. of the same day. Charge II alleges that the accused was restricted to the limits of the U.S.S. AJAX and that at 6:10 a.m. on July 3, he broke restriction. The parties agree that the restriction was imposed by virtue of a court-martial sentence. Appellate defense counsel contends that, since the physical limits of the accused's restriction are coterminous with the area of his place of duty, the unauthorized departure from the former necessarily proves the unauthorized departure from the latter. On that basis, the argument continues, the offenses are not separately punishable. United States v Perry, WC NCM 57–01904, November 22, 1957; cf. United States v Howard, WC NCM 57–01678, November 1, 1957; contra, United States v Holliday, NCM 57–03670, January 7, 1958. The Government concedes that the transaction is single, but it maintains that the offenses are separate because the accused violated two separate "duties." See

United States v Larney, 2 USCMA 563, 10 CMR 61.

The problem of the "one or the many," as we may call it, is a recurrent one in the law. Periodically, the Federal courts struggle with it[1] and frequently it appears in cases before this Court. We have pointed out the inutility of attempting a solution to the problem in a particular case by means of a "label," or by stressing the difference in the number of the Articles of the Uniform Code allegedly violated. United States v Posnick, 8 USCMA 201, 24 CMR 11; United States v Brown, 8 USCMA 18, 23 CMR 242; United States v Davis, 2 USCMA 505, 10 CMR 3. As we said in the *Posnick* case, supra, page 203: "The law is not the slave of its own terminology—rather, language is the servant of the law." In the field of punishment, the fundamental principle is that a person shall not be twice punished for the same offense. Braverman v United States, 317 US 49, 87 L ed 23, 63 S Ct 99 (1942). A working rule for determining the essential oneness of several different charges is set out in the *Posnick* case. We there said: ". . . if the evidence sufficient to support a conviction on one charge will support a conviction on another charge, the two charges are not separate." Supra, page 203; see also United States v Dicario, 8 USCMA 353, 24 CMR 163; United States v Duggan, 4 USCMA 396, 15 CMR 396.

[1] See Bell v United States, 349 US 81, 99 L ed 905, 75 S Ct 620 (1955); Prince v United States, 352 US 322, 1 L ed 2d 370, 77 S Ct 403 (1957); United States v Universal C. I. T. Credit Corp. 102 F Supp 179 (WD Mo) (1952), affirmed, 344 US 218, 97 L ed 260, 73 S Ct 227 (1952).

Measured by this standard, the instant charges are the same.

To prove a breach of restriction, the Government is required, *inter alia*, to show that before being set at liberty by a competent authority the accused went beyond the limits of his restriction under circumstances which are to the prejudice of good order and discipline. See Military Justice Handbook: The Law Officer, Department of the Army Pamphlet No. 27–9, August 1954, page 100; United States v Howard, 2 USCMA 519, 10 CMR 17. Not every departure from the limits of restriction establishes the offense. At least a punitive restriction is a "deprivation of privileges." Manual for Courts-Martial, United States, 1951, paragraph 126*g*. It limits freedom of movement, but it does not affect a person's duty assignment. In the language of the Manual, restriction "will not in any event operate to exempt the person on whom it is imposed from any military duty." Paragraph 126*g*, page 209. Consequently, a person restricted to the company area can be ordered to perform duties outside that area. Here, for example, a division officer of the ship could not set the accused at liberty from the restriction (Manual for Courts-Martial, supra, paragraph 197*a, c*), but he could, in the exercise of command functions, order the accused to carry supplies to the ship from a shore area. As soon as the accused stepped off the ship in compliance with such an order, he would be outside the area of his restriction without being set at liberty by a competent authority, but certainly not under circumstances to the prejudice of good order and discipline. The surrounding circumstances,

therefore, are of pivotal importance. When, to show these circumstances, the Government relies upon proof of an unauthorized absence from the area of restriction, and that proof is, by itself, also sufficient to establish a violation of Article 86, the same evidence supports the conviction for both offenses. As a result, the charges are not separate for punishment purposes. *United States v Posnick*, supra; United States v Morgan, 8 USCMA 341, 24 CMR 151; United States v Brown, 8 USCMA 18, 23 CMR 242.[2]

We previously noted that the accused pleaded guilty to both charges. From the allegations in each specification it can be concluded that the breach of restriction was in fact based upon the unauthorized absence alleged. Cf. United States v Walker, 8 USCMA 640, 25 CMR 144; United States v Hood, 8 USCMA 473, 24 CMR 283. However, the effect of multiplicious charges is ordinarily limited to the sentence. *United States v Posnick*, supra. Punishment for an absence for the period alleged includes confinement for no more than one month and the maximum confinement for breach of restriction is also one month. Since the court imposed a sentence which included a bad-conduct discharge and confinement at hard labor for six months, it is manifest that it acted on the basis of the additional punishment provisions in the Manual for Courts-Martial, supra, paragraph 127*c*, Section B, as amended by Executive Order No. 10565, September 28, 1954, 19 FR 6299, rather than by aggregating the maximum punishment for the two charges of which the accused was convicted.[3] It is doubtful

---

[2] As in the *Brown* and *Morgan* cases, the Table of Maximum Punishments presents an odd situation in a case of this kind. Initially, the punishment for the unauthorized absence is the same as that for breach of restriction but when the accused's absence exceeds three days it subjects the accused to a greater punishment than for breach of restriction. Manual for Courts-Martial, supra, paragraph 127*c*, page 220, as amended by Executive Order No. 10565, September 28, 1954, 19 FR 6299.

[3] Manual for Courts-Martial, supra, paragraph 127*c*, Section B, titled "Permissible additional punishments" as amended by Executive Order No. 10565, supra, authorizes the imposition of a dishonorable discharge and confinement at hard labor for one year for three previous convictions within one year. On review, the convening authority held that one of the convictions was not final at the time of the trial and was inadmissible into evidence. He reduced the period of confinement to three

that the court-martial was induced to resort to the additional punishment provisions by the duplicate charge. However, to accord him the benefit of any doubt, we return the record of trial to the board of review for reconsideration of the sentence.

___

months to cure the error and bring the sentence within legal limits.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in the result):

I concur in the result for the reason expressed in United States v Woolley, 8 USCMA 655, 25 CMR 159.