UNITED STATES

v.

**Victor Jerome MILLER, 358 50 2917, Sonar Technican (Surface) Seaman Apprentice (E–2), U.S. Navy.**

NMCM 83 1019.

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 19 Nov. 1982.

Decided 29 July 1983.

LTCOL M.W. Lucas, USMC, Appellate Defense Counsel.

CDR G. Sid Smith, JAGC, USN, Appellate Defense Counsel.

LT Michael P. Cogswell, JAGC, USNR, Appellate Government Counsel.

Before GLADIS, Senior Judge, and BYRNE and GARVIN, JJ.

BYRNE, Judge:

At his special court-martial, Sonar Technician (Surface) Seaman Apprentice Miller was found guilty, contrary to his pleas, of a number of offenses in violation of the Uniform Code of Military Justice (UCMJ).

## A. Facts

The first offense occurred on August 28, 1982 when Seaman Apprentice Miller violated Article 134 of the UCMJ, 10 U.S.C. § 934, by wrongfully communicating a threat to injure a Department of Defense police officer. (The police officer testified that before this incident occurred Seaman Apprentice Miller had been drinking alcoholic beverages.) Following this first offense, Seaman Apprentice Miller absented himself, without authority, from his organization from September 17 to September 21, 1982.

Upon Seaman Apprentice Miller's return he was restricted in lieu of arrest pending disciplinary action. His notification that he was restricted in lieu of arrest stated he was "prohibited from possessing or consuming any beer or alcoholic beverages while in this restricted status." Prosecution Exhibit 4. On October 1, 1982, while still in the status of restriction in lieu of arrest, Seaman Apprentice Miller consumed alcoholic beverages on board the Naval Air Station, Jacksonville, Florida.

Prior to pleas, trial defense counsel moved to dismiss a specification on the grounds of an unreasonable multiplication of charges. This specification, the only one under Additional Charge II, was alleged as an orders offense in violation of Article 92, UCMJ, 10 U.S.C. § 892. It stated:

In that Sonar Technician (Surface) Seaman Apprentice Victor J. Miller, U.S. Navy, Naval Air Station, Jacksonville, Florida, on active duty, having knowledge of a lawful order issued by Commanding Officer, Naval Air Station, Jacksonville, Florida, to wit: Naval Air Station, Jacksonville, Florida Instruction 1626.5B dated 19 April 1979, an order which it was his duty to obey, did, on board Naval Air Station, Jacksonville, Florida, on or about 1 October 1982, fail to obey the same by indulging in intoxicating beverages while in a restricted status.

The other specification, the only one under Additional Charge III, was alleged as breaking restriction offense in violation of Article 134, UCMJ. It stated:

In that Sonar Technician (Surface) Seaman Apprentice Victor J. Miller, U.S. Navy, Naval Air Station, Jacksonville, Florida, on active duty, having been duly restricted to the limits of Naval Air Station, Jacksonville, Florida, did, on board Naval Air Station, Jacksonville, Florida, on or about 1 October 1982, break said restriction by indulging in intoxicating beverages.

After the defense rested, the military judge stated she agreed that these two specifications constituted an unreasonable multiplication of charges. She inquired if the prosecution desired to elect which of these two specifications he desired to pursue. The trial counsel stated he chose to proceed on the Article 134, UCMJ, breaking restriction, offense. Armed with both the defense and the Government request to dismiss the orders offense, the military judge dismissed it. The accused subsequently was convicted of the breaking restriction offense.

## B. The Issue

■ Appellate defense counsel now asserts, in an assignment of error, that the

breaking restriction specification under Additional Charge III does not state an offense "as the specified conduct (indulging in intoxicating beverages) does not constitute breach of the geographic confines imposed by the restriction, an essential element of breaking restriction."

The issue is:

DOES A SPECIFICATION STATING THAT AN ACCUSED BROKE RESTRICTION BY INDULGING IN INTOXICATING BEVERAGES ALLEGE AN OFFENSE?

We hold that it does allege an offense.

C. *Prior Opinions Distinguished*

Appellate defense counsel cites *United States v. Modesett,* 9 U.S.C.M.A. 152, 25 C.M.R. 414 (1958), as authority for his proposition that to break restriction one must breach the "geographic confines" imposed by the restriction. *Modesett* does not address the precise issue before us.

In *United States v. Wilson,* 12 U.S.C.M.A. 165, 30 C.M.R. 165 (1961), the accused was suspected of committing a larceny while under the influence of alcohol. His commander imposed restriction in lieu of arrest and also ordered him "not to indulge in alcoholic beverages." *Wilson,* at 166. The order, which was to apply in all places and all occasions, without limitation as to time, was held to be so broadly restrictive of a private right that it was arbitrary and illegal. We note that the order in *Wilson* was without restriction as to time, unlike the present case. We also note that the issue in *Wilson* was concerned with an orders violation that was not part of the restriction order, whereas the offense in this case involves a condition on liberty imposed as part of a restriction in lieu of arrest. We also note that the United States Court of Military Appeals has approved that form of restriction in lieu of arrest which geographically limits a servicemember's liberty for the sole purpose of placing other, non-geographical, restrictions or conditions on the servicemember's liberty. *Pearson v. Cox,* 10 M.J. 317 (C.M.A.1981). Although we can visualize theoretical differences, we would be hard-pressed to find a practical and meaningful distinction between curtailing a servicemember's geographical access to opportunities to consume alcoholic beverages and requiring him not to consume such beverages.

In *United States v. Wahl,* 4 C.M.R. 767 (A.F.B.R.1952), the accused was placed under restriction in lieu of arrest by a letter order from his commanding officer. Paragraph 3 of the letter stated that during the period of the restriction the accused was not to indulge in alcoholic beverages. The Air Force Board of Review held that the order was unlawful. It specifically noted that "the prohibition against drinking was not part of the order of restriction, although given at the same time, and is charged, and here considered, as a separate order." *Wahl,* at 770. However, in the present case, the order not to possess or consume beer or alcoholic beverages while in a restricted status *was* part of the order of restriction and *was* charged as a breach of restriction. *See* section A, *supra.*

D. *Development Of Law Regarding Restriction in Lieu of Arrest*

The genesis of restriction in lieu of arrest may be found in a 1942 opinion of the Judge Advocate General of the Army. TJAG ltr SPJGJ 250.3 1942/5170 of 5 Nov 1942. *See United States v. Haynes,* 15 U.S.C.M.A. 122, 124, 35 C.M.R. 94, 96 (1964). The JAG opinion stated that restriction in lieu of arrest is another alternative in situations where it is neither necessary nor desirable to place an accused in confinement or under arrest pending trial. This alternative method of pretrial restraint was sanctioned by the President in paragraph 19b of the *Manual for Courts-Martial, U.S. Army, 1949.* Paragraph 20b of the *Manual for Courts-Martial, 1969 (Rev.) [MCM, 1969 (Rev.)]* provides the current source of authority for restriction in lieu of arrest:

An officer authorized to arrest ... may, within his discretion and without imposing arrest, restrict an accused person of his command, or subject to his authority, to specified areas of a military command with the further provision that he will participate in all military duties and ac-

tivities of his organization while under the restriction.

█ Consequently, before persons in the military service may be restricted in lieu of arrest, they must be accused or suspected of an offense. Personnel may be placed into such status either by an officer of their command, or by an officer, to whose authority they are subject, who is authorized to arrest.

The bases for placing a suspect or accused into restriction in lieu of arrest are:

(1) The suspect's or accused's presence pending investigation may be necessary (*id.*); or

(2) It is a wise precaution to restrict the suspect or accused in order that s/he may not again be exposed to the temptation of misconduct similar to that for which s/he is already under charges (*id.*); or

(3) Other valid reasons, other than for purposes of punishment [*Cf. Pearson v. Cox, supra; United States v. Gentle,* 16 U.S.C.M.A. 437, 37 C.M.R. 57 (1966)].

### E. *Footnote 5 Inapplicable But Opinions are Relevant*

█ Footnote 5 of Section A of paragraph 127c of the *MCM, 1969 (Rev.),* states the maximum punishment for violation of an Article 92 offense is inapplicable:

(1) If in the absence of the order or regulation which was violated or not obeyed the accused would on the same facts be subject to conviction for another specific offense for which a lesser punishment is prescribed in this table.

(2) If the violation or failure to obey is a breach of restraint imposed as a result of an order.

Because the military judge dismissed the Article 92 offense, footnote 5 is inapplicable to this case. Footnote 5 would have been applicable *if* the military judge had dismissed the breach of restriction offense and left the Article 92 offense. A logical consistency between footnote 5 cases and the issue in this case is mandatory.

In *United States v. Hofmiller,* 12 U.S.C. M.A. 479, 31 C.M.R. 65 (1961) (per curiam),

it was held that the maximum punishment for failure to obey a lawful order restricting a Marine to his battery area was limited to that for a breach of restriction rather than a violation of Article 92.

Would a violation of another condition in the notification of restriction in lieu of arrest which temporarily removed an on-base privilege (*i.e.,* consuming alcoholic beverages) be subject to another rule? It would not.

The order given to Seaman Apprentice Miller not to consume any alcoholic beverages while in a restricted status was part of the restriction order. It was part of the routine duties that Seaman Apprentice Miller had to perform as part of the restriction order—the gravaman of the offense was *not* the flouting of the direct order of a superior. *See United States v. Larney,* 2 U.S.C.M.A. 563, 10 C.M.R. 61 (1953); *United States v. Loos, supra.* Further, there is nothing in this order that makes it of far greater gravity than a breach of restriction. *See United States v. Giles,* 16 C.M.R. 334 (A.B.R.1954); *United States v. Porter,* 11 U.S.C.M.A. 170, 28 C.M.R. 394 (1960).

To provide for a greater punishment for failure to obey an order when that order is simply one aspect of a restriction in lieu of arrest would be to provide for a *greater* punishment for a tangential aspect of the restriction. Such a result would be logically unsound.

*United States v. Taylor,* 32 C.M.R. 851 (A.F.B.R.1962) illustrates the correct approach to resolution of these issues. The accused, who was in a restriction in lieu of arrest status, violated the personal order of his squadron commander "to report to the Squadron Charge of Quarters at Building 110 every two hours during non-duty hours until the time he decided to retire and to notify the Charge of Quarters when he was retiring and to remain in his room until duty hours the following day...." The Court held that the gravaman of the offense was a breach of restriction in violation of Article 134—consequently footnote 5 applied and the total authorized punishment was that for a breach of restriction.

For footnote 5 purposes, in the present case the violation of the alcohol consumption order in the notification was "a breach of restraint imposed as a result of an order." *MCM, 1969 (Rev.)*, par. 127, fn. 5(2). *United States v. Lattimore*, 17 C.M.R. 400 (A.B.R.1954).

We conclude that footnote 5 would have been applicable *if* the military judge had dismissed the breach of restriction offense instead of the Article 92 offense.

## F. Military Regulations Only Permit Consumption of Alcoholic Beverages in Certain Areas Seaman Apprentice Miller Had Access To

There are many military prohibitions against and limitations upon the consumption of alcoholic beverages. Many have no similar counterparts in civilian life. These prohibitions and limitations are necessary because Congress, the civilian secretaries, and our military leaders firmly believe the consumption of alcoholic beverages in many situations is deleterious to the high morale, good order, discipline, effectiveness, efficiency, and health of our armed forces. *See* SECNAVINST 5300.28 of 12 Jun 1981, Subj: Alcohol and Drug Abuse Control, par. 5; OPNAVINST 3120.32A of 27 Mar 1979; Subj: Standard Organization and Regulations of the U.S. Navy, art. 520.28.2; UCMJ, arts. 112, 113, 10 U.S.C. §§ 912, 913. *See also* Act of Feb. 2, 1901, ch. 192, sec. 38, 31 Stat. 748, 758, repealed (see 10 U.S.C. secs. 8011 to End at 373, Schedule of Laws Repealed). *Cf.* OPNAVINST 5350.4 of 29 Nov 1982, Subj: Substance Abuse Prevention and Control, enclosure (3).

In the naval service, the use of alcoholic beverages on board any ship, craft, aircraft, or in any vehicle of the Department of the Navy is "prohibited," except as may be authorized by the Secretary of the Navy. Navy Regs. (1973), art. 1150. Further, such use "within naval activities and other places ashore under naval jurisdiction" is only authorized "to the extent and in such manner as the Secretary of the Navy may prescribe." *Id.* Consequently, at Seaman Apprentice Miller's duty station, the use of alcoholic beverages is prohibited unless specifically permitted. *Id.* The Secretary of the Navy implemented U.S. Navy Regulations by permitting the consumption of alcoholic beverages at naval air stations, but only in certain activities thereon, such as enlisted men's clubs. SECNAVINST 1700.-11B of 29 Mar 1973, Subj: Alcoholic beverages, possession, sale, and consumption of within military installations under naval jurisdiction.

From our reading of the restriction in lieu of arrest notification received by Seaman Apprentice Miller, it appears that he was not completely excluded from those areas aboard the naval air station where he could lawfully have consumed alcoholic beverages. *Compare id.* with Prosecution Exhibit 4, ROT.[1]

## G. Why an Absolute Prohibition Against the Consumption of Alcoholic Beverages While in Restriction In Lieu Of Arrest is Lawful

Restriction in lieu of arrest is the progeny of arrest. *See* section D, *supra*. It provides a practical alternative to the more stringent confines of arrest, which also imposes conditions in addition to merely geographic ones. *See MCM, 1969, (Rev.)*, par. 20a. To be viable, from a military point of view, restriction in lieu of arrest requires additional conditions to balance the greater liberty of movement granted.

It is well known that the consumption of alcoholic beverages lowers inhibitions. Military necessity requires tight discipline aboard naval vessels and military installations. Service personnel placed in restric-

---

1. Prosecution Exhibit 4, the notification of restriction in lieu of arrest, states, in pertinent part: You are restricted to the limits of Naval Air Station, Jacksonville, Florida. You are permitted to go to the following facilities: Enlisted Dining Hall, Main Navy Exchange, Navy Exchange Express Store, Chapel, Legal Office, Navy Legal Service Office, Dispensary, Naval Hospital and Special Services facilities. You are not permitted to go anywhere else on this station, unless directed to do so or in the performance of your military duties. Under no circumstances are you to leave the limits of this station. Furthermore, you are prohibited from possessing or consuming any beer or alcoholic beverages while in this restricted status.

tion in lieu of arrest are either suspected or accused of some military offense. There has been a valid reason for placing them in such a status. (*See* Section D of this opinion.)

In this case, Seaman Apprentice Miller communicated a threat to a DOD police officer. He had been drinking. Thereafter, he absented himself from his organization without authority.

If Seaman Apprentice Miller had not been prohibited from drinking he would have been exposed to the temptation of further misconduct. Further, he could have been a threat to witnesses who could testify against him because his inhibitions had been lowered by drinking. Additionally, his ability to participate in the preparation of his defense on the pending charges could have been reduced.

Most importantly, if restriction in lieu of arrest is to be a viable alternative to arrest, a commanding officer should be able to remove a suspect's or accused's privilege of consuming alcoholic beverages on a naval installation, on a routine basis, while the alleged offender is in a restriction in lieu of arrest status whenever the commander considers such prohibition is in the best interests of high morale, good order, discipline, and the military effectiveness of the command.

### H. *Holdings*

We hold that prohibitions against the consumption of alcoholic beverages while military personnel are in a restriction in lieu of arrest status are lawful. *Cf., Pearson v. Cox, supra; United States v. Sanchez,* No. 75 3195 (N.C.M.R. 12 August 1976).

We hold that a specification which states that an accused broke restriction in lieu of arrest by indulging in intoxicating beverages alleges an offense. *Cf., United States v. Laminack,* 8 C.M.R. 660 (A.F.B.R.1953). *Contra, United States v. Arrwood,* No. 70 3058 (N.C.M.R. 15 December 1970).

The findings and sentence, as approved below, are affirmed.

Senior Judge GLADIS and Judge GARVIN concur.