**UNITED STATES**

v.

**Gerald Joseph OUELLETTE, Jr., 005 62 8916, Aviation Fire Control Technician Airman Apprentice (E-2), U.S. Navy.**

**NMCM 82 5290.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 29 July 1982.

Decided 9 Aug. 1983.

LCDR Richard K. Delmar, JAGC, USNR, Appellate Defense Counsel.

LCDR W.A. Dorsey, JAGC, USNR, Appellate Government Counsel.

Before EOFF, Chief Judge, and GORMLEY and MIELCZARSKI, JJ.

MIELCZARSKI, Judge:

Appellant was convicted by a special court-martial bench trial of unauthorized absence, missing movement through neglect, use of marijuana, and breaking restriction in violation of Articles 86, 87, 92 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 887, 892 and 934. He was sentenced to confinement at hard labor for 45 days, forfeiture of $367.00 pay per month for 4 months, reduction to pay grade E–1, and a bad conduct discharge. The convening and supervisory authorities approved the findings and sentence without modification. Appellant has two assignments of error.

I

THE MILITARY JUDGE ERRED BY REFUSING TO SUPPRESS THE RESULTS OF THE URINALYSIS, AND BY ADMITTING THE EVIDENCE WITHOUT SUFFICIENT INDICIA OF THE TEST'S RELIABILITY.

II

THE OFFENSES OF WHICH APPELLANT WAS FOUND GUILTY DO NOT WARRANT THE PERMANENT STIGMA OF A BAD CONDUCT DISCHARGE.

We find merit with the first assignment of error, set aside the findings of guilty and dismiss the charge and specification alleging use of marijuana, and reassess the sentence. Our reasons are set forth below.

The unit administrative officer testified about events that led to appellant being subjected to a mandatory urinalysis. He described in detail his dialogue with the commanding officer in obtaining authorization to conduct competency for duty examinations for appellant and another sailor who were both suspected of larceny. The following passage from the record is relevant.

Q. Now you say you asked for a competency for duty examination?

A. Yes.

Q. Permission to do that rather?

A. That is correct.

Q. Did you ever mention anything about a search authorization or command authorization for a search?

A. Yes I did, that was part of it. After the competency for duty, obviously if a guy is—you caught him stealing something, what else has he stolen from the squadron, so our next order of business would be, once we determine whether these guys were high or drunk, would be to find out what else that had—

Q. Well that was—you're talking about another time, but I'm talking about that evening to do the urinalysis?

A. I'm not sure what you're asking here.

Q. While you were on the phone to the CO that evening reporting what had happened here, did you say anything about search authorization or command authorization?

A. I requested that we be allowed to do a search, after the competency for duty.

Q. You specifically requested a search authorization?

A. Yes.

Q. What was the competency for duty? Were you—

MJ: I see your theory Lieutenant Shomper, but the witness is interpreting your question to mean some other search.

DC: That's what I'm trying to clarify, whether he's talking, or rather he's referring to a competency for duty examination as the same as a search authorization.

WIT: No, two separate things.

MJ: You were going to look elsewhere for other stolen property?

WIT: Yes, sir.

Q. Requesting a urinalysis now, that was part of your request for competency for duty examination, is that correct?

A. That's correct.

Q. But was not part of the request for search authorization. That came at a later time?

A. I'm not sure where you're going but, I guess I'll have to just restate what I did. I told the skipper what I observed. He said, "Competency for duty. Let's check these guys out". [sic] He said, you know, "Here they are stealing flight equipment, do you think they might have taken anything else?". He said, "I want a search conducted of the barracks when you're through with the competency for duty". [sic]

Q. And part of competency for duty this included the urinalysis?

A. Always, as I understand it.

Q. Did he specifically authorize you to do a urinalysis, or did he—

A. Like I said earlier, we broke it out that if the competency for duty could not be conducted that evening that we would go for a breathalyzer and urinalysis as a minimum. We discussed that specifically.

. . . .

Q. Now if I understand it correctly, just to avoid any confusion now, the urinalysis was part of the competency for duty, is that correct. [sic] It's always part of the competency for duty examination?

A. As I understand it, the way that the system is set up, a competency for duty

involved blood, urinalysis, and examination by a physician, physical examination, and observations of that physician.

Q. And when you called the CO, was it for the purpose of getting his permission to do the competency for duty examination?

A. Not specifically. I just really alerted him to what was going on, and he said, "We really ought to do this", [sic] and I said, "I think you're right". [sic]

DC: I have no further questions.

MJ: Any redirect examination?

TC: Just one question, Your Honor.

### REDIRECT EXAMINATION

Questions by the trial counsel:

Q. Have you ever requested a search, permission to search by a urinalysis, meaning, "I want to do a urinalysis, give me permission to do a search"?

A. Once again, I'm not really sure of the question, but, no they're not related. A search is something completely different than a urinalysis.

TC: Thank you. No further questions, Your Honor.

▉▉▉ Based upon the foregoing testimony, we conclude that the military judge erred in failing to grant the defense motion to suppress the results of the urinalysis. We find no fault with the military judge's special finding that the commanding officer authorized a mandatory urinalysis for appellant and did so upon reliable information sufficient to constitute probable cause for a seizure authorization. But we cannot agree with the military judge's conclusion that the label attached by the commanding officer to his order to conduct the urinalysis is without importance. Evidence derived from a mandatory urinalysis conducted pursuant to a properly authorized seizure predicated on probable cause is admissible in a trial by court-martial, *Murray v. Haldeman,* 16 M.J. 74 (C.M.A.1983); *United States v. Armstrong,* 9 M.J. 374 (C.M.A.1980), but evidence obtained as a result of a competency for duty determination is not admissable. *See* ALNAV 015/82 dtd 041528Z February 1982 amending SECNAVINST 5300.28.[1]

1. The operative text in this ALNAV provides:
A. SECNAVINST 5300.28
1. DOD HAS REVISED ITS POLICY ON MANDATORY URINALYSIS TESTING FOR CONTROLLED SUBSTANCES. POLICY NOW PROVIDES FOR THE CONDUCT OF URINALYSIS TESTING PURSUANT TO:
A. INSPECTIONS UNDER MILITARY RULE OF EVIDENCE 313 (INCLUDES UNIT SWEEPS AND RANDOM SAMPLING);
B. A SEARCH OR SEIZURE UNDER MILITARY RULE OF EVIDENCE 311–317 (SPECIFICALLY PROBABLE CAUSE);
C. AN EXAMINATION FOR A VALID MEDICAL PURPOSE UNDER MILITARY RULE OF EVIDENCE 312(F): (1) TO DETERMINE A MEMBER'S FITNESS FOR DUTY OR WHETHER A MEMBER REQUIRES COUNSELING, TREATMENT, OR REHABILITATION FOR DRUG ABUSE (INCLUDES COMPETENCE FOR DUTY EXAMS AND COMMAND–DIRECTED TESTS ORDERED ON AN INDIVIDUAL BASIS IN ACCORDANCE WITH PARAGRAPHS 3B AND 3C OF ENCLOSURE (3) TO REF A); OR (2) IN CONJUNCTION WITH A MEMBER'S PARTICIPATION IN A DOD DRUG TREATMENT AND REHABILITATION PROGRAM; AND
D. ANY OTHER EXAMINATION FOR A VALID MEDICAL PURPOSE UNDER MILITARY RULE OF EVIDENCE 312(F).

2. THE REVISED DOD POLICY ALSO PROVIDES THAT THE RESULTS OF MANDATORY URINALYSIS CONDUCTED UNDER PARAS 1A, 1B AND 1D ABOVE MAY BE USED TO TAKE APPROPRIATE DISCIPLINARY ACTION AND TO ESTABLISH THE BASIS FOR A SEPARATION AND CHARACTERIZATION IN A SEPARATION PROCEEDING.
3. THE FOLLOWING INTERIM CHANGE TO REF A IS EFFECTIVE IMMEDIATELY. CHANGE PARAGRAPH 3D, PAGE 4, OF ENCLOSURE (3) TO REF A TO READ AS FOLLOWS. QUOTE
D. DISCIPLINARY ACTION AND ADMINISTRATIVE SEPARATIONS
(1) THE RESULTS OF URINALYSIS TESTING CONDUCTED DURING (1) AN INSPECTION UNDER MILITARY RULE OF EVIDENCE 313 (INCLUDES UNIT SWEEPS AND RANDOM SAMPLINGS); (2) A SEARCH OR SEIZURE UNDER MILITARY RULES OF EVIDENCE 311–317 (SPECIFICALLY PROBABLE CAUSE); AND (3) AN EXAMINATION CONDUCTED BY MEDICAL PERSONNEL FOR PURELY MEDICAL REASONS (NOT INCLUDING COMPETENCE FOR DUTY EXAMINATIONS) MAY BE USED TO TAKE APPROPRIATE DISCIPLINARY ACTION AND TO ESTABLISH THE BASIS FOR SEPARATION AND THE

We are convinced that the record only supports a conclusion that, when the commanding officer issued his order for the urinalysis, he communicated an election to compel appellant to undergo a competency for duty examination *or such part thereof* as was then available. We find no factual basis in the record which supports the government's argument that the commanding officer additionally authorized the urinalysis under the search and seizure authority he possessed pursuant to Rules 312(d) and 315 of the Military Rules of Evidence. The scope of the search authorized by the commanding officer extended only to appellant's billeting spaces to look for stolen property. Since the guilty finding of use of marijuana in violation of Article 92, UCMJ, is premised on the results of the urinalysis under discussion, the guilty finding must be set aside and reassessment of the sentence is appropriate. *United States v. Zunino,* 15 U.S.C.M.A. 179, 35 C.M.R. 151 (1964); *United States v. Christopher,* 13 U.S.C.M.A. 231, 32 C.M.R. 231 (1962); *United States v. Reed,* 1 M.J. 1114 (C.M.R.1977).

 Even upon reassessment, we find no merit in the second assignment of error that a bad conduct discharge is inappropriate for appellant. While we recognize that the remaining findings of guilty are multiplicious for sentencing, *United States v. Modesett,* 9 U.S.C.M.A. 152, 25 C.M.R. 414 (1958); *United States v. Posnick,* 8 U.S.C. M.A. 201, 24 C.M.R. 11 (1957), we find the separate charges place the appellant's misconduct in proper perspective in describing an unauthorized absence of nearly two months which began by appellant breaking restriction and which resulted in his missing movement (through neglect) of his unit. *United States v. Marine,* 17 U.S.C.M.A. 460, 38 C.M.R. 258 (1968); *United States v. Jenkins,* 39 C.M.R. 808 (N.B.R.1968); *United States v. Morgan,* 38 C.M.R. 761 (N.B.R. 1968). In addition we note appellant's prior disciplinary record includes three prior instances of nonjudicial punishment which include two involvements with marijuana and two unauthorized absences.

Accordingly, the findings of guilty of Charge IV and its specification are set aside and that Charge and specification are dismissed. The remaining findings of guilty are affirmed. Upon reassessment only so much of the sentence as approved on review below as provides for confinement at hard labor for 45 days, forfeiture of $250.00 pay per month for two months, reduction to pay grade E–1, and a bad conduct discharge are affirmed.

Chief Judge EOFF and Judge GORMLEY concur.

BASIS FOR CHARACTERIZATION IN THE SEPARATION PROCEEDING.

(2) RESULTS OF URINALYSIS TESTING CONDUCTED: (1) TO DETERMINE A MEMBER'S FITNESS FOR DUTY OR WHETHER A MEMBER REQUIRES COUNSELING, TREATMENT, OR REHABILITATION FOR DRUG ABUSE (INCLUDES COMPETENCE FOR DUTY EXAMINATIONS AND COMMAND–DIRECTED TESTS SUCH AS THOSE ORDERED ON AN INDIVIDUAL BASIS IN ACCORDANCE WITH PARAGRAPHS 3B AND 3C); OR IN CONJUNCTION WITH A MEMBER'S PARTICIPATION IN A DOD DRUG TREATMENT AND REHABILITATION PROGRAM, MAY BE USED TO ESTABLISH THE BASIS FOR SEPARATION IN A SEPARATION PROCEEDING BUT MAY NOT BE USED TO ESTABLISH THE BASIS FOR DISCHARGE CHARACTERIZATION, NOR MAY THEY BE USED AGAINST THE MEMBER IN ACTIONS UNDER THE UNIFORM CODE OF MILITARY JUSTICE. UNQUOTE