SIMON L. COLLIER, Lance Corporal,
U. S. Marine Corps, Petitioner

v

UNITED STATES and M. P. RYAN, Major General,
USMC, Commanding, 2d Marine Division, FMF,
Camp Lejeune, North Carolina, Respondents

19 USCMA 511, 42 CMR 113

Miscellaneous Docket

No. 70–33

July 2, 1970

*Lieutenant Scott M. Feldman,* JAGC, USNR, argued the cause for Petitioner.

*Lieutenant James E. Akers,* JAGC, USNR, argued the cause for Respondents. With him on the brief was *Lieutenant Colonel Charles J. Keever,* USMC.

FERGUSON, Judge:

Petitioner was convicted on May 23, 1969, by general court-martial, convened at the 2d Marine Division, Camp Lejeune, North Carolina, of one specification alleging the wrongful sale of heroin, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a dishonorable discharge, total forfeitures, confinement at hard labor for eight years, and reduction to the grade of E–1. The convening authority reduced the confinement portion of the sentence to two years and ordered the accused confined at the U. S. Naval Disciplinary Command, Portsmouth, New Hampshire. The United States Navy Court of Military Review, on March 18, 1970, with one member dissenting, affirmed the findings and sentence as approved below.

On January 29, 1970, the Acting Commandant, First Naval District, Boston, Massachusetts, under the authority of Article 57(d), Code, supra, 10 USC § 857, granted the petitioner's request for deferral of sentence pending completion of appellate review, released him from confinement, and ordered him to report to the 2d Marine Division on February 25, 1970. Two days later, February 27th, the Commander of the 2d Marine Division issued an order rescinding the deferral of confinement and again directed that the petitioner be reconfined at Portsmouth.

Petitioner, on April 7, 1970, requested that this Court declare the February 27th order of the Commanding General, 2d Marine Division, to be invalid and inoperable under the law, on the ground that it was arbitrary, capricious, and violative of the basic elements of due process. According to counsel for Collier, the latter reported a day early to the 2d Marine Division, committed no 'new' offenses, and did nothing amounting to misconduct to provide any basis for the action rescinding the order deferring the serving of his sentence.

The two orders, copies of which were attached to Collier's petition, are set forth hereinafter.

"HEADQUARTERS
FIRST NAVAL DISTRICT
NAVY BUILDING

495 Summer Street,
Boston, Mass. 02210
29 Jan 1970

In the case of Private Simon L. COLLIER, U. S. Marine Corps, 2211677, tried by general court-martial at Marine Corps Base, Camp Lejeune on 24 May 1969, a petition for deferral of the unserved portion of the sentence to confinement has come before me. The petition is granted, and the unserved portion of the sentence to confinement is deferred until such time as the sentence is ordered into execution, unless the deferment of confinement is sooner rescinded. The application of the remaining forfeiture is deferred until the sentence is ordered into execution, unless the deferment of confinement is sooner descinded.

/s/R. Belt
R. W. BELT
Captain, U. S. Navy
Acting Commandant,
First Naval District
Officer Exercising General
Court-Martial Jurisdiction

Certified a true copy:

/s/R. L. Wilkins
R. L. WILKINS, LCDR, JAGC, USN."

" 'HEADQUARTERS
2d Marine Division, FMF
Camp Lejeune, North Carolina 28542

17/RES/wdm
5813/3
Feb 27 1970

In the general court-martial case of Private Simon L. COLLIER, 221 16 67, U. S. Marine Corps, the proceedings of which were promulgated in General Court-Martial Order No. 94–69, this Headquarters, dated 10 December 1969, the petition for deferral of the unserved portion of the sentence to confinement and that the application of

the remaining forfeitures be deferred until the sentence is ordered into execution has been granted by the Acting Commandant, First Naval District by action dated 29 January 1970.

It appears from the record in this case that the accused was convicted on 26 May 1969, for violation of Article 134, Uniform Code of Military Justice, to wit: sale of heroin. He was sentenced by the court-martial to be reduced to pay grade E–1, to be dishonorable [sic] discharged from the service, to forfeit all pay and allowances for eight years, and to be confined at hard labor for eight years. (One prior conviction was considered). In my action, as promulgated in General Court-Martial Order No. 94–69, this Headquarters, only so much of the sentence, as provided for confinement at hard labor for two years, forfeiture of all pay and allowances for two years, reduction to pay grade E–1, and a dishonorable discharge was approved. (In this action, two nonjudicial punishments were considered). Subsequent to the order of the Acting Commandant, First Naval District, Private Simon L. COLLIER, was transferred to, and is now again a member of, this Command.

It is noted that by Navy Clemency Board Order No. 014–70, dated 29 January 1970, the Navy Clemency and Parole Board recommended no clemency be granted at that time.

It is considered that Private Simon L. COLLIER may be a danger to the community and a likelihood exists that he may repeat the offense. Accordingly, pursuant to Article 57(d), Uniform Code of Military Justice, so much of the order of the Acting Commandant, First Naval District, dated 29 January 1970, as deferred the service of the sentence to confinement at hard labor for two years and the application of the remaining forfeitures until the sentence is ordered into execution, is rescinded. The unserved portion of the sentence to confinement will be served and the uncollected forfeitures shall apply to pay becoming due on and after the date of this action. Pending appellate review, the accused will be confined in the U. S. Naval Disciplinary Command, Portsmouth, New Hampshire.

/s/M. P. Ryan
M. P. RYAN
Major General, U. S. Marine Corps. Commanding, 2d Marine Division, FMF"
/s/W. S. Kirkpatrick
W. S. KIRKPATRICK
Captain, U. S. Marine Corps
Legal Administration Officer
By direction of
M. P. RYAN
Major General, U. S. Marine Corps Commanding, 2d Marine Division, FMF"

On April 9, 1970, this Court directed the Government to show cause in writing why the relief sought should not be granted.

The Government contended that the decision of the Commanding General, 2d Marine Division, was not arbitrary or capricious and, in any event, his decision is not subject to judicial review. As part of its reply, the Government included the following affidavit from General Ryan:

"MICHAEL P. RYAN, being duly sworn, deposes and says:

I am a Major General in the United States Marine Corps and from May 1969 to the present I served as and still am serving as the Commanding General, 2d Marine Division, FMF, Camp Lejeune, North Carolina.

On 27 February 1970 I issued an order rescinding the deferment of sentence order issued by the acting Commandant, First Naval District in the case of Private Simon L. COLLIER, 221 16 67, U. S. Marine Corps.

Prior to issuing this order I again reviewed the record of trial in the above entitled court-martial case.

I noted that the accused, Private COLLIER, was convicted on 23 May 1969 of the offense of selling heroin in violation of Article 134, Uniform Code of Military Justice while a member of this command.

I also noted that at the time he was apprehended for selling heroin some 81 capsules of heroin were found at the scene of apprehension. Although originally charged with the possession of the same the charge was withdrawn since conscious possession of the 81 capsules of heroin could not be conclusively proven.

I was also aware of the fact that while confined awaiting the instant court-martial the authorities at the Base Correctional Facility, Marine Corps Base, Camp Lejeune, North Carolina, found it necessary to place Private COLLIER in a segragation [sic] cell because of his frequent disciplinary infractions.

Additionally, I was aware of the fact that the accused was under investigation for inciting a riot while in the Base Correctional Facility subsequent to his special court-martial in November 1968. While this investigation did not result in charges being preferred, Private COLLIER subsequent to this instant general court-martial was transferred to the U. S. Naval Disciplinary Command, Portsmouth, New Hampshire at the instance of the Base Corrections Officer even though I had not reviewed this case or taken my action as convening authority.

After considering the foregoing factors I determined that Private COLLIER might be a danger to the community and that there was a likelihood that he may repeat the offense.

/s/Michael P. Ryan
MICHAEL P. RYAN

Sworn to before me this
16th day of April 1970

/s/J. R. Motelewski
J. R. MOTELEWSKI
Staff Judge Advocate
2d Marine Division, FMF."

Article 57(d), Code, supra, which served as the basis of authority for the action taken by each of the officers exercising general court-martial jurisdiction, was added to the Code by the congressional enactment of the Military Justice Act of 1968. Public Law 90–632, 90th Congress, 2d Session, 82 Stat 1335; 10 USC § 801, *et seq.* One of the purposes of the Act was "to increase the postconviction safeguards and remedies available to the accused." Senate Report No. 1601, 90th Congress, 2d Session, U. S. Code Congressional and Administrative News, page 4501, 4504. Prior to that time there was no *statutory* provision for release from confinement of a convicted accused pending completion of appellate review. Levy v Resor, 17 USCMA 135, 37 CMR 399 (1967). As we noted in *Levy,* the President, in promulgating the Manual for Courts-Martial, United States, 1951,[1] did not institute a system of bail for the military despite his power to do so (Article 36, Code, supra, 10 USC § 836), and the Congress specifically excluded courts-martial from the Bail Reform Act of 1966, 80 Stat 214, 18 USC § 3146, *et seq.* See Levy v Resor, supra, pages 139–140. This deficiency, however, was remedied by the passage of Article 57(d), Code, supra, which provides:

"(d) On application by an accused who is under sentence to confinement that has not been ordered executed, the convening authority or, if the accused is no longer under his jurisdiction, the officer exercising general court-martial jurisdiction over the command to which the accused is currently assigned, may in his sole discretion defer service of the sentence to confinement. The deferment shall terminate when the sentence is ordered executed. The deferment may be rescinded at any time by the officer who granted it or, if the accused is no longer under his jurisdiction, by the officer exercising general court-martial jurisdiction over the command to which the accused is currently assigned."

The Senate Report, accompanying this legislation, contains the following language with reference to the pertinent codal provision:

---

[1] Repromulgated without change, Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 21*d.*

"9. A new provision, section 2(24), is inserted which would amend article 57 of the code (effective date of sentences) to authorize convening authorities to defer execution of certain sentences to confinement during the appellate review process, thus providing for the first time a procedure similar to release on bail pending appeal in civilian courts.

. . . . .

"Section 2(24) amends article 57 (effective date of sentences) to permit the deferment of sentences to confinement during the appellate review process. For the convicted military accused, no practical provision for release during the period of appellate review now exists. Article 57(b) provides that a sentence to confinement begins to run from the date it is adjudged by the court, with the exception that periods during which it is suspended are to be excluded in computing the term of confinement. The Court of Military Appeals has held (United States v May, 10 USCMA 358, 27 CMR 415 (1959)) that a suspension of a sentence makes the accused a probationer as to the part suspended, and that the suspension may not thereafter be vacated except after a hearing to establish that the accused has violated his probation. Suspension of sentence cannot, therefore, be used effectively as a means of release pending appeal. In consequence, a convicted military prisoner must begin serving his sentence to confinement from the date it is adjudged, even though it ultimately may be reversed on appeal. If it is reversed by the Court of Military Appeals, the prisoner probably will have served the entire sentence by the time a decision is rendered. If reversal comes earlier, at the court of military review level, he will at least have served several months of the sentence before reversal.

"This amendment will correct this situation by authorizing a means of release from confinement during appellate review. Under the proposed new subsection (d), article 57, the convening authority or the officer exercising general court-martial jurisdiction over the command could in his discretion defer an individual's service of a sentence to confinement which has not been ordered executed, upon the accused's application. The deferment would be terminated and the sentence would begin to run automatically when the sentence is approved upon review and ordered executed. The discretion exercised would be very broad and would be vested exclusively in the convening authority or the officer exercising general court-martial jurisdiction. Such officers would take into consideration all relevant factors in each case and would grant or deny deferment based upon the best interest of the individual and the service. The officer granting the deferment or, if the individual is no longer under his jurisdiction, the officer exercising general court-martial jurisdiction over the command to which the individual is currently assigned would have discretionary authority to rescind it at any time." [Senate Report, supra, at pages 4503, 4513, 4514.]

In Reed v Ohman, 19 USCMA 110, 41 CMR 110 (1969), we considered the application of Article 57(d) in connection with a petition for a writ of habeas corpus or alternative relief. Reed had been convicted by general court-martial and was then confined in a local military correctional facility. He sought release from confinement pending appellate review of his conviction or, alternatively, to prevent his transfer to the United States Disciplinary Barracks, Fort Leavenworth, Kansas. In denying Reed's petition, for failure to establish grounds for his release, we said of Article 57(d):

". . . We perceive nothing in either the language of the Article or the legislative background of the deferment provision to indicate an intention by Congress to change the established rule that . . . temporary restraint pending appellate review is lawful." [*Ibid.*, at page 116.]

The legality of post-trial restraint pending appellate review of a court-

martial conviction is well established. Article 13, Code, supra, 10 USC § 813; paragraph 21*d*, Manuals, supra; United States v Howard, 2 USCMA 519, 10 CMR 17 (1953); Levy v Resor and Reed v Ohman, both supra. And, as we said in *Reed*, "the decision to restrain is reviewable for abuse of discretion." *Ibid.*, at page 115.

In the case at bar, it is the action of the Commanding General, 2d Marine Division, ordering that the ▮ accused be *reconfined* that is in dispute. Since his original decision to restrain the accused is reviewable for abuse of discretion (Reed v Ohman, supra), clearly his order to reconfine the accused is subject to the same review. General Ryan's affidavit reflects that his decision was based solely on that state of affairs which existed at the time of his original order following accused's conviction. Were we considering only the original order we might be inclined to agree that there was no abuse of discretion in the decision to impose posttrial restraint upon the petitioner. Levy v Resor; Reed v Ohman; and United States v Howard, all supra. But that is not all for we ▮ are also faced with the interim decision of the officer exercising general court-martial jurisdiction over the U. S. Naval Disciplinary Command, Portsmouth, New Hampshire, that the accused's service of his sentence to confinement be deferred. Since the latter's action was also based on the authority granted by Article 57(d), Code, supra, we must assume that he took "into consideration all relevant factors" in the case and granted the deferment "based upon the best interest of the individual and the service." This necessarily included his knowledge of the petitioner during the latter's incarceration at Portsmouth, *a factor which apparently was not included by General Ryan in his determination to rescind the order of deferment.*

Even if we assume, *arguendo*, that each officer considered the *same facts* and came to opposite conclusions as to whether the petitioner's service of confinement should be deferred, we are also faced with the anomalous situation present in this case. On the one hand, the petitioner was released from custody and returned to his command. The officer in charge at that installation, however, disagreed with the previous decision, rescinded it, and returned the petitioner to the custody of the same officer who had already determined that he should not be confined and had ordered his release. Certainly, Congress did not intend, by the enactment of Article 57(d), to create an impasse between commands simply because of a disagreement on the *same facts*. In our opinion, something more is needed before a validly issued order to defer service of sentence may be rescinded. Cf. Christoffel v United States, 196 F2d 560 (CA DC Cir) (1951). Were we to hold otherwise, the chilling effect on one commander's discretionary consideration of an application to defer service of sentence, where that decision could be unilaterally countermanded by another commander, is apparent.

The provisions of the Uniform Code relating to deferment of service of sentence to confinement were intended by Congress to remedy a long-standing defect in the military system. They were intended to be used. Acceptance of the state of affairs represented by this case would tend to severely restrict that use and thus contravene the obvious intent of the Congress.

The petition for appropriate relief is granted. The order of the Commanding General, 2d Marine Division, is declared invalid and thus inoperative to rescind the petitioner's deferment of service of sentence to confinement. His release from custody is ordered.

Chief Judge QUINN concurs.

DARDEN, Judge (dissenting):

In the case before us I am unable to perceive that the legality of the petitioner's restraint has any effect on the jurisdiction of this Court to entertain a petition for review of his trial at such time as that petition may be ripe for presentation.

This Court is one "established by Act of Congress" and consequently it may issue "all writs necessary or appropriate in aid of" its jurisdiction, under section 1651 of Title 28, United States Code. Noyd v Bond, 395 US 683, 23 L Ed 2d 631, 89 S Ct 1876 (1969). Definition of what is in aid of jurisdiction necessarily entails a consideration of what is this Court's jurisdiction.

The only statutory basis for our jurisdiction is Article 67 of the Uniform Code of Military Justice, 10 USC § 867. Under the language of this article, jurisdiction of this Court attaches only after an earlier review by a Court of Military Review. Article 67(g) requires the United States Court of Military Appeals and the Judge Advocates General to make a comprehensive survey of military justice and to make legislative recommendations on this subject. I consider this as other than a grant of authority, though, and I am unable to point to any other section of chapter 47, Title 10, United States Code, that could be viewed as conferring any jurisdiction on this Court.

Generally, then, this Court has no jurisdiction until after a Court of Military Review has acted.

I have carefully considered, of course, this Court's decisions in United States v Frischholz, 16 USCMA 150, 36 CMR 306 (1966); Gale v United States, 17 USCMA 40, 37 CMR 304 (1967); and United States v Bevilacqua, 18 USCMA 10, 39 CMR 10 (1968). In *Bevilacqua* the Court referred to its decisions in *Frischholz* and *Gale* and declared that "[t]hese comments and decisions certainly tend to indicate that this Court is not powerless to accord relief to an accused who has palpably been denied constitutional rights in any court-martial; and that an accused who has been deprived of his rights need not go outside the military justice system to find relief in the civilian courts of the Federal judiciary." *Id.*, at pages 11–12. This language was later clarified in United States v Snyder, 18 USCMA 480, 483, 40 CMR 192 (1969), by a statement that it referred "to cases in which we have jurisdiction to hear appeals or to those to which our

jurisdiction may extend when a sentence is finally adjudged." To this I would add that our powers on "cases in which we have jurisdiction to hear appeals" are only powers to prevent that potential jurisdiction from being thwarted, not powers to regulate every step of the proceedings by which a case later subject to our review is developed.

The Supreme Court's decisions on what is in aid of jurisdiction make clear that what is now section 1651 of Title 28, United States Code, is not an independent grant of authority. Some cases enunciate a rule that for an appellate court to issue writs under section 1651, the appellate court must already have obtained jurisdiction of the case. Whitney v Dick, 202 US 132, 50 L Ed 963, 26 S Ct 584 (1906); Price v Johnston, 334 US 266, 92 L Ed 1356, 68 S Ct 1049 (1948); Adams v United States, 317 US 269, 87 L Ed 268, 63 S Ct 236 (1942). But other decisions hold that if a case is potentially within the appellate jurisdiction of the higher court, extraordinary writs may issue in aid of the appellate jurisdiction that might otherwise be defeated by the unauthorized action or inaction of the court below. McClellan v Carland, 217 US 268, 54 L Ed 762, 30 S Ct 501 (1910); Federal Trade Com. v Dean Foods Co., 384 US 597, 16 L Ed 2d 802, 86 S Ct 1738 (1966). It seems clear, however, that such a broad view of extraordinary writ powers in aid of jurisdiction is still predicated on the threat of a loss of the Court's appellate powers over the subject matter. Under such a view, if a Court of Military Review or another official or entity were acting or failing to act in a manner that tended to impair the right of an accused to petition this Court or to prevent this Court from discharging its responsibilities under Article 67, an extraordinary writ such as mandamus or prohibition might well be appropriate as an aid of jurisdiction.

Habeas corpus in aid of jurisdiction is strikingly different from habeas corpus as an original and independent proceeding under specific statutes such

**517**

as sections 2241, 2242, and 2243 of Title 28, United States Code. Because an evidentiary hearing may be required, under that statutory arrangement an appellate court has express authority to decline to entertain an application for a writ of habeas corpus and may transfer the application for a hearing and a determination to the district court having jurisdiction to entertain it. In contrast, this Court in entertaining habeas corpus applications alleged to be in aid of jurisdiction is without any express authority to conduct a hearing to determine the facts and instead must attempt to resolve any factual controversies on the basis of appellate briefs. To me this is impractical, if not impossible.

Accordingly, I would dismiss the petition for lack of jurisdiction to order the relief it seeks.