PATRICK D. CHENOWETH, Fireman, U. S. Navy, Petitioner

v

CLYDE J. VAN ARSDALL, Admiral, U. S. Navy, Commandant,
Twelfth Naval District

and

JAMES E. KEYES, Captain, JAGC, U. S. Navy,
Military Judge, Respondents

22 USCMA 183, 46 CMR 183

Miscellaneous Docket
No. 73–1
March 13, 1973

Eric A. Seitz, Esquire, R. L. Eshelman, Esquire, W. E. Miller, Esquire and David F. Addlestone, Esquire, counsel for Petitioner.
Lieutenant Colonel G. L. Bailey, USMC, and Lieutenant E. Alan Hechtkopf, JAGC, USNR, counsel for Respondents.

## Memorandum Opinion of the Court

Shortly before its scheduled deployment to the western Pacific area, the USS *Ranger* sustained extensive damage to the main reduction gears of its number 4 engine. Repair of this damage, at a cost of about $800,000.00, delayed the departure of the vessel for several months. Acting upon the belief that sabotage was involved and that the peitioner herein—a member of the crew—was implicated, naval authorities preferred charges against him alleging violations of Articles 108 and 134, Uniform Code of Military Justice, 10 USC §§ 908 and 934.

These charges were referred to an investigating officer pursuant to Article 32, UCMJ, 10 USC § 832. The investigation was scheduled to commence August 9, 1972, but the defense was granted a delay. Intervening delays, all at the requests of the defense, extended the investigation to September 27, 1972. On October 25, the charges were referred for trial to a general court-martial appointed by the respondent, Commandant, Twelfth Naval District. The other respondent, Captain James E. Keyes, is the military judge of that tribunal. Although trial was scheduled to commence on November 6, 1972, at the Treasure Island Naval Station, San Francisco, further delays were granted, and on November 16, the ship departed for the western Pacific where it is now on station.

The defense requested that subpoenas be issued for 20 witnesses, most of whom were assigned to the *Ranger*, and further requested an opportunity to interview an additional 16 witnesses. The Government has indicated it will call 14 witnesses, 11 of whom are assigned to the *Ranger*.

In view of the location of the majority of the witnesses, the prosecution moved for a change in the situs of trial to the USS *Ranger*. Four reasons were advanced in support of this motion: (a) To ensure the orderly functioning of the trial; (b) The operating needs of the USS *Ranger*; (c) Economy in the expenditure of public funds; and (d) Pretrial publicity.

After an extended hearing, and over defense objection, the military judge directed the trial removed to Subic Bay, Republic of the Philippines, to hear all witnesses assigned to the *Ranger*, and thereafter that the trial be reconvened at Treasure Island to hear all other witnesses.

Thereafter, petitioner filed a Petition for Writ of Prohibition in this Court; we ordered a temporary stay of proceedings, and directed the Judge Advocate General, United States Navy, to show cause why the relief sought should not be granted.

The petition avers that the ruling transferring the proceedings, in part, to Subic Bay, denies petitioner his constitutional right to be tried within the state wherein the offense was allegedly committed, as guaranteed by article III, section 2, clause 3, of the Constitution of the United States. The article reads:

> The Trial of all Crimes, except in cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by law have directed.

The requirements of article III and the similar requirements of the Sixth Amendment, as well as the Fifth Amendment provision respecting presentment and indictment of a grand jury, have been held inapplicable to military tribunals. In *Ex parte* Quirin, 317 US 1, 39, 87 L Ed 3, 63 S Ct 2 (1942), it was held:

> Presentment by a grand jury and trial by a jury of the vicinage where the crime was committed were at the time of the adoption of the Constitution familiar parts of the machinery for criminal trials in the civil courts. But they were procedures unknown to military tribunals, which are not

courts in the sense of the Judiciary Article, Ex parte Vallandigham, 1 Wall 243, 17 L Ed 589; In re Vidal, 179 US 126, 45 L Ed 118, 21 S Ct 48; cf. Williams v United States, 289 US 553, 77 L Ed 1372, 53 S Ct 751, and which in the natural course of events are under conditions precluding resort to such procedures. As this Court has often recognized, it was not the purpose or effect of § 2 of Article III, read in the light of the common law, to enlarge the then existing right to a jury trial. The object was to preserve unimpaired trial by jury in all those cases in which it had been recognized by the common law and in all cases of a like nature as they might arise in the future, District of Columbia v Colts, 282 US 63, 75 L Ed 177, 51 S Ct 52, but not to bring within the sweep of the guaranty those cases in which it was then well understood that a jury trial could not be demanded as of right.

■ Neither the Uniform Code of Military Justice nor the Manual for Courts-Martial, United States, 1969 (Revised edition), establish the location at which a court-martial may, or must, be conducted. Paragraph 36*b* of the Manual provides that the convening authority shall designate the time and place courts-martial convened by his order shall meet. However, once he has referred charges to a court-martial, any motion for a change of venue, or of the situs of the trial, is properly addressed solely to the military judge as an interlocutory matter, and his ruling thereon "is final and constitutes the ruling of the court." Article 51 (b), UCMJ, 10 USC § 851(b); United States v Nivens, 21 USCMA 420, 45 CMR 194 (1972).

Petitioner urges the view that a motion for change of venue or situs may be made solely by the defense. In support thereof, he cites Rule 21(b), Federal Rules of Criminal Procedure, to which we adverted in United States v Nivens, supra. It provides:

For the convenience of parties and witnesses, and in the interest of jus-

tice, the court upon motion of the defendant may transfer the proceeding as to him or any one or more of the counts thereof to another district.

■ We cited Rule 21(b) in *Nivens* as indicative of the general power of a court-martial to entertain motions of the type here under study, and of the trial judge's responsibility for ruling upon such motions after the charges have been referred to a court-martial for trial. We also reiterated our view that federal practice applies to courts-martial if not incompatible with military law or with the special requirements of the military establishment. See United States v Knudson, 4 USCMA 587, 16 CMR 161 (1954); United States v Fisher, 4 USCMA 152, 15 CMR 152 (1954). Rule 21(b) was designed for the practice prevailing in the courts established under article III, upon which the provisions of article III, section 2, clause 3, supra, are operative. Under the latter provision, since a defendant is entitled to a trial by jury "in the State where the said Crimes shall have been committed," the prosecution is barred from seeking a change of venue on its own initiative whatever the circumstances relied upon may be. As noted above, however, these constitutional requirements do not apply to courts-martial. *Ex parte* Quirin, supra. Whether and to what extent a military judge may take action at variance with the procedures prescribed for article III tribunals, absent any positive demand of the Uniform Code or the Manual for Courts-Martial, necessarily depends upon the facts and circumstances of each case. The decision in such cases depends upon the trial judge's conclusion that manifest necessity exists for his action in order to prevent the denial of the ends of public justice. Wade v Hunter, 336 US 684, 93 L Ed 974, 69 S Ct 834 (1949). His conclusion must reflect a balancing of the interests of the person on trial with the competing and equally legitimate demand for public justice. Illinois v Somerville, 41 USLW 4319 (US Feb. 27, 1973); Wade v Hunter, supra. The departure of a combat vessel in

time of war or national emergency, with the majority of witnesses for both the prosecution and the defense serving as essential members of its crew, creates such a manifest necessity as is contemplated by the above-cited authorities, and this is especially true when the individual on trial was a member of that crew at the time of the offense alleged, and the offense involves damage to that vessel. In such circumstances, a military judge may grant a change of situs upon motion of the prosecution, and his ruling thereon is subject to review for abuse of discretion in the normal course of prescribed appellate procedures.

Petitioner further avers that the military judge's ruling in this instance constitutes a clear abuse of discretion and prejudices his substantial rights. Principally relied upon are the contentions that the ruling denies him his right to a public trial in violation of the Sixth Amendment of the Constitution and that it is contrary to paragraph 53e, Manual for Courts-Martial, and may deny him the effective assistance of counsel.

Since there is no indication that petitioner will be denied a public trial either at Subic Bay or at San Francisco, the first contention need not be further explored.

Statements of Eric A. Seitz, Esquire, civilian counsel for petitioner, and of other attorneys are relied upon as supportive of the contention that the ruling may deny him effective assistance of counsel. These statements allege that colleagues of Attorney Seitz were arrested by Philippine authorities under provisions of martial law, threatened with trial for capital offenses and ultimately deported without trial. Since this terminated a long series of harassing actions, Attorney Seitz fears for his own safety if he returns to that country. In his "Response to Order to Show Cause," counsel for respondents declares:

Through appropriate channels the government of the Philippines has advised that no charges are pending against civilian counsel Eric Seitz in the Philippines. Therefore, Mr. Seitz has no reason to fear making an appearance on behalf of petitioner at the Naval Base Subic Bay. Incidents conerning counsel's colleagues arose not out of their legal services to military personnel but out of anti-government activities unrelated to their defense of military personnel.

Petitioner has filed a reply to the Response to the Order to Show Cause, but has not challenged the foregoing representations of respondents. Petitioner does not allege, nor does it otherwise appear, that the prosecution motion for change of situs was made for the purpose of preventing civilian counsel's appearance at trial.

A number of cases illustrate actions by this Court taken "in aid of jurisdiction," and serve to establish the outlines of the areas of permissible action under 28 USC § 1651(a).

In Jones v Ignatius, 18 USCMA 7, 39 CMR 7 (1968), it appeared that a convening authority improperly prevented review of the record of a petitioner's trial by a Court of Military Review, and thus barred a petition for review by this Court pursuant to Article 67(b)(3), Uniform Code, supra, 10 USC § 867(b)(3). Upon a petition for extraordinary relief, the convening authority's action was set aside, and a new action permitting the case to be processed in accordance with the appellate procedures established by the Uniform Code was ordered. There, the illegal action of the convening authority directly and palpably thwarted the prospective jurisdiction of this Court, and the remedial action taken was calculated to restore that jurisdiction by returning the case to normal appellate channels.

Another facet of action "in aid of jurisdiction" is presented by cases in which we have intervened to preserve our power to grant meaningful relief from any prejudicial error which may ultimately appear upon our review pursuant to Article 67(b)(3), UCMJ. In Collier v United States, 19 USCMA 511, 42 CMR 113 (1970), we set aside

an illegal order vacating deferment of a sentence to confinement pending completion of appellate review, for no remedy available to us in the normal course of appellate review could adequately cure the error. In Montavan v United States, Misc Docket, No. 70–3 (USCMA, Feb. 26, 1970), it appeared that approximately ten months had elapsed subsequent to petitioner's trial by general court-martial and the convening authority had not acted thereon as required by Articles 61–64, UCMJ, 10 USC §§ 861–864. In order to preserve the possibility of granting meaningful relief for any error which might appear during the course of the normal appellate procedures, we directed immediate compliance with the mentioned articles. See United States v Prater, 20 USCMA 339, 43 CMR 179 (1971).

Affirmative action was taken in Fleener v Koch, 19 USCMA 630 (1969), and Zamora v Woodson, 19 USCMA 403, 42 CMR 5 (1970), to prevent the exercise of jurisdiction by courts-martial over offenses and persons not authorized by the Constitution. In each of the cited cases, the action was considered necessary to prevent a waste of the time and energy of the military tribunals involved throughout the trial and appellate stages when it was abundantly clear that any verdict of guilty returned by the court-martial would be overturned. See Illinois v Somerville, supra.

Since in military practice a trial judge may grant a change in the situs of a trial, the remaining issues presented, to wit: the propriety of trial counsel's action upon the defense requests for the appearance of certain witnesses,[1] and the ability of civilian counsel adequately to prepare and present a defense of the charges, are well within the sphere of the military judge's powers to assure the petitioner a fair trial before an impartial court.

In view of the foregoing, it appears that no action complained of tends to prevent the exercise of this Court's power to review, in the normal course, any conviction which may result from a trial on the merits, or upon such review, to grant meaningful relief from any prejudicial error which may then appear. Accordingly, the Petition for Writ of Prohibition is hereby dismissed.

---

[1] This question is raised by the petitioner's reply to respondent's response to our Order to Show Cause.