UNITED STATES, Appellee,

v.

Specialist Five Willie L. CORLEY, SSN
587–32–6619, United States
Army, Appellant.

CM 435059.

U. S. Army Court of Military Review.

17 March 1978.

Captain Steven J. McAuliffe, JAGC, argued the cause for the appellant. With him on the brief were Lieutenant Colonel John R. Thornock, JAGC, Captain D. David Hostler, JAGC, and Captain Michael P. La Haye, JAGC.

Captain Gary F. Thorne, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Lieutenant Colonel John T. Sher-

wood, Jr., JAGC, Major Steven M. Werner, JAGC, and Captain Clement L. Hyland, JAGC.

Before COOK, DRIBBEN and DeFORD, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Judge:

The appellant contrary to his pleas, was convicted of multiple charges of conspiracy to commit larceny, larceny, forgery, presenting false claims and solicitation to commit larceny in violation of Articles 81, 121, 123, 132 and 134, respectively, Uniform Code of Military Justice (UCMJ) (10 U.S.C. §§ 881, 921, 923, 932 and 934). He received an approved sentence that included a bad-conduct discharge, confinement at hard labor for three years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. Our review of the appellant's case is pursuant to Article 66, UCMJ.

The appellant's conviction stems from the operation of a fraudulent scheme within the Fort Carson, Colorado finance office where he worked as a clerk. Soldiers were solicited by clerks in the finance office to apply for basic allowances for quarters (BAQ) and separate rations. The solicited soldiers were not married, and as a consequence were not entitled to such payments. The finance clerks would forge the certifying official's signature which indicated that a soldier's marital status had been verified and then place a back-dated form in the soldier's file. The soldier would then inquire as to why he had not received BAQ or separate rations. The clerk processing the complaint would examine the file and determine that the soldier had not been paid by reason of a mistake in the finance office procedures and then prepare a voucher which would result in payment being commenced.

Upon appeal, appellant has alleged numerous assignments of error of which four are worthy of discussion: (1) the military judge failed to instruct on the issue of uncharged misconduct; (2) the court-martial lacked subject-matter jurisdiction over

Charge I and its specification; (3) hearsay evidence of uncharged misconduct was admitted during the sentencing portion of the trial; and, (4) the convening authority abused his discretion in denying appellant's request for deferment of confinement pending appellate review.

I

Appellant contends that the military judge committed error in refusing a defense request for an instruction on uncharged misconduct on findings. Among the several charges and specifications alleged, Charge V and its specification set forth in part that the appellant falsely altered a marriage certificate substituting the names of Elyah Christopher Mayo, Jr. and Irene Edwards and the date of 26 August for the original entries on the form.

Private Mayo testified that he had been recruited to participate in the fraudulent scheme by the appellant. After the scheme had been started with regard to Mayo's request for BAQ, a finance clerk had called Mayo's unit and asked the first sergeant if Mayo was married. As a consequence of this telephone call, the first sergeant requested proof of Mayo's marriage. Mayo stated that he told the appellant that he had to show proof of his marriage and the appellant had given him the marriage certificate with instructions on how the certificate could be changed to show Mayo's name, his alleged wife and the date of his supposed marriage.

The appellant testified that he gave the marriage certificate as a favor to Mayo in order that Mayo could continue living off post. He stated that he didn't know that Mayo intended to use the certificate to secure an illegal BAQ payment.

The thrust of appellant's testimony was that he gave the marriage certificate to Mayo for the avowed purpose of deceiving his first sergeant. Appellant's trial defense counsel requested an instruction on uncharged misconduct which was denied by the trial judge.

■ The requirement that the trial judge instruct *sua sponte* on the limited purpose for which evidence of other misconduct may be considered is beyond cavil.[1] However, no instruction is required where the alleged misconduct is so intermingled with the crime charged as to form an inseparable transaction.[2]

■ Here, the testimony raised by the appellant was offered to show that his act of providing Mayo with the marriage certificate was essentially an innocent act done only to assist a friend. However, that testimony could be construed to at least constitute a disorder to the prejudice of good order and discipline.

We do not believe that the statement of the Court in *Grunden, supra,* that "when evidence of uncharged misconduct is permitted, nothing short of an instruction will suffice" was meant to change the previous precedent cited below. Even if our construction of *Grunden* is incorrect, we are nevertheless required to test the error for prejudice.[3] We see no possibility that the court would consider the appellant a bad man on the basis of the aforesaid testimony of the appellant. Accordingly, we do not find error much less the possibility of prejudice.

## II

Appellant further contends that the court-martial lacked subject-matter jurisdiction over Charge I and its specification. The substance of appellant's allegation is based upon the premise that the solicitation of Specialist Mayo to file a false claim

against the United States occurred away from a military post or reservation under the decision in *O'Callahan v. Parker*[4] and *Relford v. Commandant.*[5]

The record establishes that in the latter part of April 1975, the appellant visited the living quarters of one William Badget and Elyah Mayo. The two men resided off the military reservation of Fort Carson, Colorado.

During the visit the appellant asked Mayo if he desired to get BAQ. Mayo asked for further clarification as to his meaning and the appellant replied "Well, I could fix it up, you know, where you could be getting illegal BAQ and Finance wouldn't never (sic) find out about it." Approximately one week later, Mayo telephoned appellant and stated that he needed to talk to him about getting married. Mayo said that the appellant advised he would get some "paperwork" and see him later. The next day, appellant brought a DA Form 3298 (Pros. Ex. 7) to appellant's apartment which Mayo signed. This form was subsequently used as a substantiating document to support the payment of BAQ and was placed in Mayo's financial records at Fort Carson.

The issue of service connection requires a careful balancing of the *Relford* factors to determine "whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and whether the distinct military interest can be vindicated adequately by the civilian courts."[6]

---

1. *United States v. Grunden*, 25 U.S.C.M.A. 327, 54 C.M.R. 1053, 2 M.J. 116 (1977); *United States v. Gaiter*, 23 U.S.C.M.A. 438, 50 C.M.R. 397, 1 M.J. 54 (1975); *United States v. Dixon*, 17 U.S.C.M.A. 423, 38 C.M.R. 221 (1968); *United States v. Bryant*, 12 U.S.C.M.A. 111, 30 C.M.R. 111 (1961). It makes no difference whether the uncharged misconduct is raised by the prosecution or the defense. *United States v. Dixon, supra*, and the cases cited therein.

2. *United States v. Tobin*, 17 U.S.C.M.A. 625, 38 C.M.R. 423 (1968); *United States v. Daniels*, 37 C.M.R. 878 (A.F.B.R.1967). *See also United States v. Sellers*, 12 U.S.C.M.A. 262, 30 C.M.R. 262 (1961).

3. *United States v. Lewis*, 14 U.S.C.M.A. 79, 33 C.M.R. 291 (1963); *United States v. Back*, 13 U.S.C.M.A. 568, 33 C.M.R. 100 (1963).

4. 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

5. 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

6. *Schlesinger v. Councilman*, 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976); *United States v. Tucker*, 24 U.S.C.M.A. 311, 52 C.M.R. 22, 1

The record does not disclose whether the appellant's contacts with Mayo were done during duty hours. However, there is no question that the appellant's initial contact with Mayo was made off the military reservation. We believe that *Relford* factors 6, 7, 9, 10 and 11 clearly support military jurisdiction in this case. In addition, we believe that the nine additional considerations stressed in *Relford, supra,* support a finding of military jurisdiction. As in *McCarthy, supra,* we believe the foregoing factors indicate a pervasive military interest. The entire criminal venture was developed by soldiers who had associated in their military relationship with intent that their acts in this matter would all lead to commission of larceny from and fraud upon the Army. Accordingly, we hold that military subject-matter jurisdiction existed with regard to Charge I and its specification.[7]

### III

Appellant further contends that he was prejudiced by the military judge admitting hearsay evidence of uncharged misconduct during the sentencing portion of the trial.

The trial judge over the objection of the defense admitted into evidence Prosecution Exhibit 26, a letter of reprimand without any foundation having been laid to support the authenticity of the document.[8]

The requirement that the prosecution properly authenticate a record kept in the normal course of business is so well known that citations for such a proposition are not required. The trial judge has the primary duty and responsibility to insure that prescribed legal standards are applied concerning the admission of evidence at a court-martial. The government failed to establish the authentication of the document in question and it was not admissible in evidence. This was error. However, not every error results in prejudice to an accused and this error must be tested for that effect.[9]

The document in question raised the issue of the alleged commission of two minor delicts: possession of an unregistered firearm and a speeding offense. In addition, the letter alluded to "turmoil in appellant's home life" as well as an acknowledgment of appellant's previous excellent duty performance. On balance, we find that there is little possibility that the foregoing letter would have in any way, contributed to appellant's sentence. Accordingly, we deem the error harmless.[10]

### IV

In appellant's final allegation of error, he contends that the convening authority abused his discretion in denying appellant's request for deferment.

The appellant's trial was completed on 11 May 1976 and as noted, the sentence included three years confinement at hard labor with other punishments. Following the trial, appellant was transferred to the United States Disciplinary Barracks on 17 May 1976. The convening authority approved the sentence on 9 August 1976. On 4 October 1976, the appellant filed an application for deferment of the sentence to confinement addressed to the Commander, Combined Arms Center and Fort Leavenworth.

In that application appellant set forth the reasons he desired deferment of confinement. Those reasons are quoted as follows:

"1) Because I can more effectively contribute to the conduct of my appeal and to efforts designed to obtain clemency if I am free from restraint pending judicial finality.

---

M.J. 463 (1976); *United States v. Black,* 24 U.S.C.M.A. 162, 51 C.M.R. 381, 1 M.J. 340 (1976); *United States v. Alef,* 3 M.J. 414 (C.M. A.1977).

7. *United States v. Moore,* 24 U.S.C.M.A. 293, 52 C.M.R. 4, 1 M.J. 448 (1976); *United States v. Henderson,* 54 C.M.R. 349, 2 M.J. 1031 (A.C.M. R.1976).

8. *See* paragraph 143*b*(2), Manual for Courts-Martial, United States, 1969 (Revised edition). Government appellate counsel concede the admission into evidence of Prosecution Exhibit 26, was error under the circumstances of this case.

9. *See* Article 59(a), UCMJ.

10. *Id.*

2) Because there is a strong probability that my conviction will be overturned on appeal and no sentence will pertain to me.

3) Because ACMR has sentence reducing power and will probably reduce my sentence significantly. I do not wish to assume the risk of serving more time in prison than is ultimately affirmed on appeal.

4) Because I am neither a danger to the community nor a flight risk and, in my judgment my best interests will be served if I am released pending appeal."

He also stated that he was not guilty of the offenses charged and set forth the following as the legal basis of the request:

"Appellate defense counsel has yet to thoroughly examine the record of trial in this case, however, the following issues will likely be raised: insufficiency of the evidence to sustain a conviction; denial of due process in that identifications (in and out-of-court) were impermissibly tainted by unfair line-up procedures and there existed a fair risk of misidentification; and the sentence was entirely too severe."

In addition, appellant stated that he was under investigation for approximately one year and that during the pretrial and trial processing of his case he did not attempt to flee to avoid either trial or the sentence of the court. Appellant points out that his offenses were of a non-violent character and do not suggest any danger to the public if he were released.

He further stated that the appeal of his conviction was based upon substantial errors which were likely to result in significant appellate relief or a reduction in sentence as a result of clemency. The appellant also advised that in the event defer-

ment was granted he planned to aid the conduct of his appeal, request excess leave, attend the University of Northern Colorado, obtain employment and generally work to demonstrate his good character and the absence of any need for further punishment or rehabilitative effort.

Appellant also addressed a letter to the convening authority in which he reiterated in effect that he was not guilty of the offenses as well as other matters.

The command staff judge advocate formally reviewed appellant's application and advised the convening authority concerning the legal considerations of the case and the convening authority's responsibility. (*See* Appendix A).

The convening authority concurred in the staff judge advocate's opinion and recommendation and denied the appellant's application.

Following the convening authority's decision to deny deferment, appellant filed on appeal to The Judge Advocate General of the Army [11] which was denied on 26 January 1977.

Thereafter on 7 February 1977, appellant filed in the United States Court of Military Appeals, a Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus, Mandamus or Other Appropriate Relief. That Court denied the requested relief by order dated 27 May 1977.[12]

■ The Constitution of the United States does not preclude post-conviction confinement.[13] Restraint of personal liberty pending appellate review of a court-martial conviction is authorized under military law.[14] Accordingly, any right to freedom from restraint following conviction and sentence which includes confinement depends upon statutory authority.

---

11. *See* paragraph 2–30, AR 27–10, 1 January 1969, as amended.

12. *See Corley v. Thurman,* 3 M.J. 192 (C.M.A. 1977), Perry, Judge, dissenting.

13. *Levy v. Resor,* 17 U.S.C.M.A. 135, 37 C.M.R. 399 (1967).

14. Article 13, UCMJ; *United States v. Teague,* 3 U.S.C.M.A. 317, 12 C.M.R. 73 (1953); *Reed v. Ohman,* 19 U.S.C.M.A. 110, 41 C.M.R. 110 (1969).

The passage of Article 57(d) of the Code did not confer upon an accused any additional advantage to avoid post-conviction restraint pending appellate review. It did, however, confer the right to petition appropriate authority and show that there were existing grounds which would warrant an accused's release from restraint pending appellate review.

Article 57(d), UCMJ, provides as follows: "(d) On application by an accused who is under sentence to confinement that has not been ordered executed, the convening authority or, if the accused is no longer under his jurisdiction, the officer exercising general court-martial jurisdiction over the command to which the accused is currently assigned, may in his sole discretion defer service of the sentence to confinement. The deferment shall terminate when the sentence is ordered executed. The deferment may be rescinded at any time by the officer who granted it or, if the accused is no longer under his jurisdiction, by the officer exercising general

court-martial jurisdiction over the command to which the accused is currently assigned."

Paragraph 88f of the Manual [15] provides in part with regard to the decisional process of granting or denying a petition for deferment that "the officers so empowered to defer the service of sentence to confinement should take into consideration all relevant factors in each case and grant or deny deferment based upon the best interests of the accused and the service." The Manual further advises against granting deferment when an accused represents a danger to the community or when the likelihood exists that he may repeat the offenses or flee to avoid service of his sentence.[16] In addition, the Manual speaks of the discretion to defer confinement as being sole and plenary.

The reported legislative purpose of Article 57(d) of the Code has been previously considered by the courts. (*See* Appendix C). Article 57(d) originated in the Department of Army as a legislative proposal which was included in the Department of

**15.** Manual for Courts-Martial, United States, 1969 (Revised edition).

**16.** The Manual provisions are essentially in conformity with Section 2.5 of the standards relating to Criminal Appeals of the American Bar Association project on Standards for Criminal Justice which provide as follows:

"2.5 Release pending appeal; stay of execution
(a) When an appeal has been instituted by a convicted defendant after a sentence of imprisonment has been imposed, the question of the appellant's custody pending final decision on appeal should be reviewed and a fresh determination made by the trial court. The burden of seeking a stay of execution and release may properly be placed on the appellant. The decision of the trial court should be subject to review by an appellate judge or court on the initiative of either the prosecution or the defense.
(b) Release should not be granted unless the court finds that there is no substantial risk the appellant will not appear to answer the judgment following conclusion of the appellate proceedings and that the appellant is not likely to commit a serious crime, intimidate witnesses or otherwise interfere with the administration of justice. In making this determination, the court should take into account the nature of the crime and length of sen-

tence imposed as well as the factors relevant to pretrial release.
(c) Execution of a death sentence should be stayed automatically when an appeal is instituted.
(d) Procedural devices can safeguard against dilatory prosecution of appeals where such problems may be found. A provision that release is conditioned upon appellants' perfecting their appeals promptly after notice of appeal insures against delay in the commencement of appeals. A provision for termination of the release after a period sufficient to permit cases to be argued or submitted to the appellate court in normal course guards against lack of diligence in preparation of briefs and records. Such limitations, if used, should be subject to extension where circumstances justify longer periods.
(e) In a jurisdiction with an intermediate appellate court, when review in the highest court is sought by a defendant-appellant, the question of his custody pending decision by the highest court may be redetermined by the intermediate appellate court or a judge thereof. When review is sought by the prosecution, standards relevant to custody of defendants pending prosecution appeal from trial court decisions should be applied. Decisions at the intermediate court level should be subject to review by the highest court."

Defense's legislative proposals forwarded to the second session of the 90th Congress. The Department of Defense proposal was attached as an amendment to HR 15971 when the bill was considered by the Senate. As amended, the bill was subsequently passed by both houses of the Congress with virtually no change·in the language incorporated in the proposal when initially forwarded to the Congress. (*See* Appendix B).

Appendix B indicates that the Department of Defense's principal reason for proposing Article 59(d) was that a″previous study conducted in 1964 and 1965 "showed that an accused whose conviction is ultimately reversed by the Court of Military Appeals probably will have already served his entire sentence to confinement by the time the decision is rendered. If reversal comes earlier at the Board of Review level, the chances are one in three." The implication necessarily contained in the foregoing statement is that prejudicial legal error must exist in the record of trial of sufficient magnitude to warrant a substantial reduction or reversal of the approved sentence. These views and their necessary implications were forwarded to the Congress and undoubtedly considered.

■ It appears in the best interest of society that a person who is convicted of a crime by a court of competent jurisdiction should begin serving his sentence at the earliest possible time in order that his rehabilitation and correction can be accomplished and he can be returned as a useful citizen at the earliest possible time.

It is equally in the best interest of both the individual concerned as well as society that a person convicted shall only serve the sentence ultimately determined by courts to be appropriate for the offense committed. However, society has the right to protect itself from those who inflict unlawful acts upon it or otherwise seek to avoid through flight, its punishment for past misdeeds.

■ In the civil sector, a convicted person does not begin serving his sentence until he is received in confinement pursuant to the judgment of a court of competent jurisdiction.[17] Under the aegis of the Bail Reform Act[18] a convicted person may be released from restraint in a non-capital case upon his own personal recognizance if he is awaiting sentence, or has filed an appeal, or a petition for writ of certiorari. The courts must be able to determine that the conditions of release will reasonably assure that the person will not flee or pose a danger to the community, and that the basis of his appeal is not frivolous or taken for delay.[19]

When released, a convicted person molds into the community generally from whence he came. Even if no apparent danger is shown at the time of his release, any potential danger is limited to that small segment of society where his presence is either known or his impact is otherwise felt. He has no capacity to endanger society as a whole.

■ In the military system, a convicted person's sentence begins to run on the date it is adjudged regardless of whether he is ordered into or continued in restraint.[20] In addition, there is an automatic review of his conviction at either the general court-martial convening authority level or before the appellate military courts. If the Bail Reform Act was applicable to the military,[21] the automatic release from restraint of a large number of soldiers convicted by courts-martial would require these persons to be reassigned to military units.

It takes little imagination to visualize the impact upon the combat and combat service support elements of the Army of a large number of personnel sentenced to confinement, who lack motivation, discipline, and in some instances, personal control and who have little to look forward to other than a

---

**17.** 18 U.S.C.A. § 3568.

**18.** 18 U.S.C. §§ 3141–3152. The Bail Reform Act is not applicable to the military forces. *Collier v. United States, supra* at 116 and the cases cited therein.

**19.** 18 U.S.C. § 3148; 18 U.S.C. § 3146.

**20.** *See* Article 57(b), UCMJ.

**21.** *See* footnote 18.

period of confinement and discharge from the service. The consequence of such an act could result in some units of the Army being potentially unable or only marginally able to perform their missions during periods of national emergency. We cannot knowingly forge a chain with potentially weak links to be used in the defense of the nation.

■ We conclude that the Congress intended that Article 57(d) should be applicable: (1) to those who present no danger to the community; (2) when there is no risk of flight to avoid service of the sentence; (3) where there is a substantial showing that a legal error exists in the record of trial of sufficient magnitude to warrant a substantial reduction in or reversal of the approved sentence; or, (4) where other good and sufficient reasons are set forth which in the interest of justice compel release from restraint pending appellate review.

■ Congress in its wisdom authorized the convicted soldier to file an application before appropriate authority requesting the statutory relief. We believe that Congress intended that a petitioner set forth the basis which entitles him to such relief as a part of that application. Such a requirement is in conformance with the American Bar Association Standards heretofore mentioned and in the best interests of both the individual and the service. Accordingly, the burden of persuasion is on an appellant to show his entitlement to the statutory relief requested.

Applying the foregoing principles to the case before us, we find that the appellant had been under investigation for more than a year prior to his conviction. The offenses of which he was convicted related to property rights and did not necessarily present a threat or danger to society. In addition, the appellant had not attempted to flee prior to trial.

■ It is the third criteria where the petitioner fails to substantiate a basis for release from restraint. Appellant alleges that he is not guilty of the offenses of which he was convicted. In addition he alleges that the evidence of record was insufficient to sustain his conviction. The staff judge advocate advised the convening authority under appropriate standards that are consistent with the legislative basis of the statute in question. He further evaluated the appellant's basis of claimed legal error and determined it was without foundation. We believe his analysis was correct, and petitioner's other reasons justifying release while laudable in scope, do not in the interest of justice, compel his release from restraint. The general court-martial convening authority did not abuse his discretion in denying appellant's application for deferment of confinement. Accordingly, we find no error.

The remaining assignments of error have been considered and are deemed to be without merit.

The approved findings of guilty and the sentence are affirmed.

Judge DRIBBEN concurs.

Senior Judge COOK concurs in the result.

## APPENDIX A

5. LEGAL CONSIDERATIONS AND CONVENING AUTHORITY'S RESPONSIBILITY:

Deferment of service of a sentence to confinement is a postponement of the running of the sentence. It is to be distinguished from a suspension of the execution of a sentence to confinement. Deferment is not a form of clemency, nor does it have any such connotation. Deferment should be granted in an appropriate case solely for the purpose of releasing the convicted person during the process of appellate review. Such action in no way constitutes a determination of the guilt or innocence of the accused.

Authority to defer a sentence to confinement is an outgrowth of the civilian judge's discretion to grant bail pending appeal in a criminal case. (See 18 USCA 3148). Absent evidence to the contrary, it reasonably may be presumed that an applicant for post-conviction bail [or deferment] is guilty as found by the court, the proceedings were proper, the evidence sufficient, and the trial free from prejudicial error. (*United States v. Estes*, 161 F.Supp. 203 (1958)). There is

no constitutional right to bail pending appeal. (*Iles v. Ellis*, 264 F.Supp. 185 (1967)).

A person who stands convicted should be released upon his application for deferment when to deny the application would be arbitrary and capricious; that is, without fair and reasonable grounds. Fair and reasonable grounds for denial include a justifiable conclusion that: (1) the applicant may flee to avoid the service of his sentence or to avoid standing trial on rehearing; (2) the applicant presents a danger to himself or to any other person or to the community; (3) the appeal is frivolous or taken for delay; *or* (4) the release is otherwise not in the best interests of the applicant and the military service. (18 USCA 3148; para 88f, MCM, 1969 (Rev.)).

My opinions expressed herein are not binding on you. Your discretion to act on the application is sole and plenary, but may not be arbitrary or capricious. You have the independent responsibility, as the officer exercising general court-martial jurisdiction over the applicant, to determine whether a deferment would be in the best interests of the applicant and the military service.

In making your decision, you should take into consideration all relevant factors, including:

a. The nature and circumstances of the offenses of which the applicant has been convicted;

b. The weight of the evidence against the applicant;

c. The applicant's family circumstances, financial resources, character and mental condition;

d. The length and character of his military service and his potential for honorable service during the period the sentence is deferred;

e. The applicant's record of previous convictions, or arrests, if any; and,

f. The applicant's record while in confinement at the Disciplinary Barracks and elsewhere.

6. DISCUSSION:

The applicant's request for deferment is based upon his desire to attend college,

obtain employment and demonstrate his good character. He does not believe further confinement is necessary. His attorney believes that there are legal errors in the record of trial (as set forth in paragraph V of the application) that will result in reversal of the case on appeal. A review of the supporting documents and the record of trial do not support the contention that the case will be reversed. The offenses committed by the accused were serious and not an isolated happening. The intention of the accused to start a new life is a proper goal and one that most prisoners in confinement express. The educational background of the accused and his intelligence level gave him opportunities and the ability to choose his way of life. He chose to commit serious criminal acts. His good record in confinement may bring relief from the Clemency and Parole Board. It would not be in the best interests of the accused or the government to release this man from confinement on deferment and be forced to bring him back when his case is approved on appeal.

7. OPINION and RECOMMENDATION:

Based upon the foregoing, and after carefully and thoroughly evaluating all the information pertinent to the factors listed in paragraph 5, above, I am of the opinion that granting a deferment of the sentence to confinement in this case is not in the best interests of the applicant and the United States Army. Accordingly, I recommend disapproval.

The application and your action thereon, together with this advice, will be forwarded to The Judge Advocate General for inclusion in the original record of trial. A form of action for your signature is at "Signature" Tab.

APPENDIX B

Honorable John W. McCormack

Speaker of the House of Representatives

Dear Mr. Speaker:

Inclosed is a draft of legislation "To amend chapter 47 (Uniform Code of Military Justice) of title 10, United States Code,

to authorize deferment of sentence to confinement during appellate review, and for other purposes."

This proposal is a part of the Department of Defense Legislative Program for the 90th Congress, and the Bureau of the Budget advises that, from the standpoint of the Administration's program, there is no objection to the presentation of this proposal for the consideration of the Congress. The Department of the Army has been designated the representative of the Department of Defense for this legislation. It is recommended that the proposal be enacted by the Congress.

### Purpose of the Legislation

The purpose of the proposed legislation is to authorize convening authorities to defer certain sentences to confinement during the appellate review process.

A convicted civilian generally is entitled to bail pending completion of appellate review of his case whenever his appeal is not frivolous, unless there is cause to believe that if freed he would not return or would be a serious danger to society. For the convicted military accused, however, no practical provision for release under any circumstances is made. Article 57(b), Uniform Code of Military Justice, provides that a sentence to confinement begins to run from the date it is adjudged by the court, with the single exception that periods during which it is suspended are to be excluded in computing the term of confinement. The Court of Military Appeals has held (*U.S. v. May*, 10 USCMA 358, 27 CMR 415 (1959) that a suspension of a sentence makes the accused a probationer as to the part suspended, and that the suspension may not thereafter be vacated except after a hearing to establish that the accused has violated his probation. In summary, then, a military prisoner is credited with serving the confinement portion of his sentence from the date it is adjudged, and there is no provision of law permitting the deferment of the confinement pending completion of appellate review. In this regard, it is noted that under the Uniform Code of Military Justice and the *Manual for Courts-Martial, United States, 1951*, a convening authority may already provide for deferment of forfeitures "until such time as the sentence as a whole is carried into execution." (See paragraph 88e (2)(c) of the Manual.)

A study of Army general court-martial cases received for review in Washington during calendar year 1964 and 1965 showed that the accused whose conviction is ultimately reversed by the Court of Military Appeals probably will have already served his entire sentence to confinement by the time a decision is rendered. If reversal comes earlier, at the Board of Review level, the changes are about one in three. In either case, even if he does not serve the entire sentence, he will have served several months before final appellate decision.

The proposed legislation will remedy the situation by a means of release from confinement during appellate review. Under the proposed new subsection (d), Article 57, the convening authority or the officer exercising general court-martial jurisdiction over the command could in his discretion defer an individual's service of a sentence to confinement which has not been ordered executed, upon the accused's application. The deferment would be terminated and the sentence would begin to run automatically when the sentence is ordered executed. The discretion exercised would be very broad and would be vested exclusively in the convening authority or the officer exercising general court-martial jurisdiction. The officer granting the deferment or, if the individual is no longer under his jurisdiction, the officer exercising general court-martial jurisdiction over the command to which the individual is currently assigned, has discretionary authority to rescind it at any time.

### Cost and Budget Data

The enactment of this proposal will cause no apparent increase in budgeting requirements for the Department of Defense.

Sincerely,

(Signed)
Stanley R. Resor
Secretary of the Army

1 Incl
Draft legislation

[An identical letter was forwarded to the President of the Senate]

## A BILL

To amend chapter 47 (Uniform Code of Military Justice) of title 10, United States Code, to authorize deferment of sentence to confinement during appellate review, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That chapter 47 (Uniform Code of Military Justice) of title 10, United States Code, is amended as follows:

(1) Section 857 (article 57), subsections (a) and (b) are each amended by inserting the words "or deferred" after "suspended".

(2) Section 857 (article 57) is further amended by adding the following new subsection:

"(d) On application by an accused who is under sentence to confinement that has not been ordered executed, the convening authority or, if the accused is no longer under his jurisdiction, the officer exercising general court-martial jurisdiction over the command to which the accused is currently assigned, may in his sole discretion defer service of the sentence to confinement. The deferment terminates when the sentence is ordered executed. The deferment may be rescinded at any time by the officer who granted it or, if the accused is no longer under his jurisdiction, by the officer exercising general court-martial jurisdiction over the command to which the accused is currently assigned."

(3) Section 871(d) (article 71(d)) is amended by inserting the words "or deferred" after the word "suspended".

## APPENDIX C

*See Collier v. United States,* 19 U.S.C.M.A. 511, 42 C.M.R. 113 (1970). There it was stated:

Article 57(d), Code, *supra,* which served as the basis of authority for the action taken by each of the officers exercising general court-martial jurisdiction, was added to the Code by the congressional enactment of the Military Justice Act of 1968. Public Law 90–632, 90th Congress, 2d Session, 82 Stat 1335; 10 USC § 801, *et seq.* One of the purposes of the Act was "to increase the postconviction safeguards and remedies available to the accused." Senate Report No. 1601, 90th Congress, 2d Session, U.S.Code Congressional and Administrative News, pages 4501, 4504. Prior to that time there was no *statutory* provision for release from confinement of a convicted accused pending completion of appellate review. *Levy v. Resor,* 17 USCMA 135, 37 CMR 399 (1967). As we noted in *Levy,* the President, in promulgating the Manual for Courts-Martial, United States, 1951, [footnote omitted] did not institute a system of bail for the military despite his power to do so (Article 36, Code, *supra,* 10 USC § 836), and the Congress specifically excluded courts-martial from the Bail Reform Act of 1966, 80 Stat 214, 18 USC § 3146, *et seq.* See *Levy v. Resor, supra,* pages 139–140. This deficiency, however, was remedied by the passage of Article 57(d), Code, *supra,* which provides:

"(d) On application by an accused who is under sentence to confinement that has not been ordered executed the convening authority or, if the accused is no longer under his jurisdiction, the officer exercising general court-martial jurisdiction over the command to which the accused is currently assigned, may in his sole discretion defer service of the sentence to confinement. The deferment shall terminate when the sentence is ordered executed. The deferment may be rescinded at any time by the officer who granted it or, if the accused is no longer under his jurisdiction, by the officer exercising general court-martial jurisdiction over the command to which the accused is currently assigned."

The Senate Report, accompanying this legislation, contains the following language

with reference to the pertinent codal provision:

"9. A new provision, section 2(24), is inserted which would amend article 57 of the code (effective date of sentences) to authorize convening authorities to defer execution of certain sentences to confinement during the appellate review process, thus providing for the first time a procedure similar to release on bail pending appeal in civilian courts.

. . . . .

"Section 2(24) amends article 57 (effective date of sentence) to permit the deferment of sentences to confinement during the appellate review process. For the convicted military accused, no practical provision for release during the period of appellate review now exists. Article 57(b) provides that a sentence to confinement begins to run from the date it is adjudged by the court, with the exception that periods during which it is suspended are to be excluded in computing the term of confinement. The Court of Military Appeals has held (*United States v. May*, 10 USCMA 358, 27 CMR 415 (1959)) that a suspension of a sentence makes the accused a probationer as to the part suspended, and that the suspension may not thereafter be vacated except after a hearing to establish that the accused has violated his probation. Suspension of sentence cannot, therefore, be used effectively as a means of release pending appeal. In consequence, a convicted military prisoner must begin serving his sentence to confinement from the date it is adjudged, even though it ultimately may be reversed on appeal. If it is reversed by the Court of Military Appeals, the prisoner probably will have served the entire sentence by the time a decision is rendered. If reversal comes earlier, at the court of military review level, he will at least have served several months of the sentence before reversal.

"This amendment will correct this situation by authorizing a means of release from confinement during appellate review. Under the proposed new subsection (d), article 57, the convening authority or the officer exercising general court-martial jurisdiction over the command could in his discretion defer an individual's service of a sentence to confinement which has not been ordered executed, upon the accused's application. The deferment would be terminated and the sentence would begin to run automatically when the sentence is approved upon review and ordered executed. The discretion exercised would be very broad and would be vested exclusively in the convening authority or the officer exercising general court-martial jurisdiction. Such officers would take into consideration all relevant factors in each case and would grant or deny deferment based upon the best interest of the individual and the service. The officer granting the deferment or, if the individual is no longer under his jurisdiction, the officer exercising general court-martial jurisdiction over the command to which the individual is currently assigned would have discretionary authority to rescind it at any time. [Senate Report, *supra*, at pages 4503, 4513, 4514.]"